

IN THE
UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| United States of America ex rel.<br>　KARLA SULTON, | ) | |
| | ) | |
| | ) | **FILED** |
| 　　　　　Petitioner, | ) | J.N |
| | ) | JUL 1 0 2008 |
| 　　v. | ) | JUL 10 2008 |
| | ) | No. 08 C 2293　MICHAEL W. DOBBINS<br>CLERK, U.S. DISTRICT COURT |
| CAROLYN TRANCOSO, Warden, | ) | |
| 　Lincoln Correctional Center, | ) | The Honorable |
| | ) | Robert M. Dow, Jr., |
| 　　　　　Respondent. | ) | Judge Presiding. |

## INDEX OF EXHIBITS CITED IN RESPONDENT'S MOTION TO DISMISS

Respondent files the following exhibits in support of her Motion to Dismiss:

Exhibit A:　*People v. Sulton*, No. 1-01-2906 (Ill.App. 2003) (Rule 23 Order);

Exhibit B:　Petition for Post-Conviction Relief, *People v. Sulton*, No. 00-CR-14045;

Exhibit C:　Order Dismissing Post-Conviction Petition, *People v. Sulton*, No. 00-CR-14045;

Exhibit D:　*People v. Sulton*, No. 1-06-2886 (Ill.App. 2007) (Rule 23 Order);

Exhibit E:　PLA, *People v. Sulton*, No. 105455; and

Exhibit F:　Order Denying PLA, *People v. Sulton*, No. 105455.

July 10, 2008

Respectfully submitted,

LISA MADIGAN
Attorney General of Illinois

By: _____

ERICA R. SEYBURN, Bar # 6287357
Assistant Attorney General
100 West Randolph Street, 12th Floor
Chicago, Illinois 60601
PHONE: (312) 814-2139
FAX: (312) 814-2253
E-MAIL: eseyburn@atg.state.il.us

SIXTH DIVISION
JUNE 27, 2003

No. 1-01-2906

## IN THE APPELLATE COURT OF ILLINOIS
### FIRST JUDICIAL DISTRICT

| THE PEOPLE OF THE STATE OF ILLINOIS, | ) | Appeal from the |
|---|---|---|
| | ) | Circuit Court of |
| Plaintiff-Appellee, | ) | Cook County. |
| | ) | |
| v. | ) | No. 00 CR 14045 |
| | ) | |
| KARLA SULTON, | ) | The Honorable |
| | ) | Stanley Sacks, |
| Defendant-Appellant. | ) | Judge Presiding. |

### ORDER

Following a jury trial, defendant Karla Sulton was convicted of aggravated kidnaping while armed with a dangerous weapon, a bludgeon, and sentenced to 12 years in prison. On appeal, defendant contends that she was not proved guilty beyond a reasonable doubt because the evidence did not establish that she was armed with a bludgeon while committing the offense. We affirm.

Defendant was charged with aggravated kidnaping while armed with a firearm and aggravated kidnaping while armed with a dangerous weapon, a bludgeon. At trial, the victim Lolita Crowell testified she first met defendant and codefendant in March 2000. During their initial meeting, the victim told codefendant and defendant that she knew a woman named Sandra at the electrical company who could "clear them up" and prevent

EXHIBIT A

1-01-2906

their lights from being cut off for nonpayment. Within a month, codefendant paid the victim $500 for that purpose.

On May 20, 2000, at 1 a.m., the victim called codefendant and asked him if he wanted to buy a pair of her husband's shoes. Codefendant indicated interest and the victim departed for codefendant's home. After her arrival, the victim sat down to speak with codefendant in the kitchen while defendant paced back and forth behind the victim. The victim testified that in the middle of her conversation with codefendant, she felt "[s]omething like a steel pipe fall on [her] head." On cross-examination, the victim clarified that she was hit on the back of the head with a gun. The victim fell to the floor and as she looked up, she saw defendant pointing a gun at her.

The victim further testified that defendant and codefendant began striking her with their fists. Codefendant bound the victim's wrists with phone cord and defendant stuffed the victim's mouth with cotton. After using duct tape to tape the victim's mouth closed, codefendant asked her where Sandra was and if the Commonwealth Edison bill had been paid.

At this point, codefendant dragged the victim to the basement and defendant followed, holding the gun. Codefendant then sat the victim against a pole in the basement and tied her up with duct tape while defendant continued to point the gun at her. After being blindfolded by duct tape, the victim was hit on

2

1-01-2906

the thighs 10 to 20 times with something that felt like rubber.
After some time, the victim was left alone for a few hours.  At
roughly 9:20 a.m., the victim freed herself and escaped from
defendant's home.

Shortly thereafter, the victim flagged down a police officer
and directed the police to defendant's residence, where both
defendant and codefendant were identified by the victim and
arrested.

Assistant State's Attorney Peter Karlovics testified that on
the day of her arrest, defendant waived her Miranda rights and
made a written statement.  Assistant State's Attorney Karlovics
read defendant's statement into the record.  Defendant stated
that on the night of May 19, 2000, codefendant represented to her
that he wanted his $500 back from the victim and that he also
wanted to "kick her ass."  When the victim called later that
night and told codefendant that she would be coming over to sell
some shoes, codefendant informed defendant that after her
arrival, he would speak to the victim in the kitchen in order to
distract her.  Codefendant instructed defendant to walk behind
the victim and, at his signal, strike her on the head with a
board.  According to her statement, defendant later did so,
stating that she hit the victim on the back of the head with a
"piece of wooden molding."

Defendant's trial testimony affirmed that on that night, she

3

1-01-2906

used a "piece of mold" to hit the victim on the back of the head.
Defendant testified that she subsequently beat the victim and
assisted in her confinement only in order to assuage
codefendant's temper and prevent him from murdering the victim.
The piece of wooden molding referred to in defendant's testimony
was not recovered by the police.

At the close of evidence, defendant was acquitted of
aggravated kidnaping while armed with a firearm and convicted of
aggravated kidnaping while armed with a dangerous weapon, a
bludgeon.

On appeal, defendant asserts that the evidence does not
prove beyond a reasonable doubt that she was armed with a
"bludgeon" during the offense because a gun or, alternatively, a
piece of wooden molding is not a "short stick used as a weapon
usually having one thick, heavy or loaded end." Defendant urges
us to adopt that definition of "bludgeon" because it was employed
by the supreme court in People v. Fink, 91 Ill. 2d 237 (1982), a
case involving a defendant charged with unlawful use of weapons.

When a defendant challenges the sufficiency of the evidence
supporting his conviction, the reviewing court must determine
whether any rational trier of fact could have found the requisite
elements of the crime beyond a reasonable doubt, when viewing the
evidence in the light most favorable to the prosecution. People
v. Hopkins, 201 Ill. 2d 26, 40 (2002). The trier of fact is

4

1-01-2906

solely responsible for assessing witness credibility, drawing reasonable inferences from the testimony and resolving testimonial conflicts. People v. Ortiz, 196 Ill. 2d 236, 259 (2002).

Aggravated kidnaping occurs when an offender knowingly confines another in secret and against her will while armed with a "dangerous weapon, other than a firearm," as defined by section 33A-1 of the Criminal Code of 1961 (Code) (720 ILCS 5/33A-1(c) (West 2000)). 720 ILCS 5/10-2(a)(5) (West 2000). Section 33A-1 sets forth three categories of dangerous weapons and defines a "Category III" dangerous weapon as a "bludgeon, black-jack, slungshot, sand-bag, sand-club, metal knuckles, billy, or other dangerous weapon of like character." 720 ILCS 5/33A-1(c)(3) (West 2000).

In the instant case, there is a testimonial conflict as to what object defendant used to strike the victim in the back of the head. The victim's testimony asserted that she felt "[s]omething like a steel pipe fall on [her] head" and that "Karla hit me on the back of the head with the gun." By contrast, defendant's testimony averred that she hit the victim with a "piece of wooden molding," "board," or "piece of mold."

Because testimonial conflicts are properly resolved by the fact-finder, the jury was free to accept or reject either position. Furthermore, in cases such as this one where the

5

1-01-2906

character of a weapon is indeterminate, the fact-finder is
responsible for ascertaining whether or not that weapon is a
"bludgeon." See, e.g., People v. Hutchins, 127 Ill. App. 2d 296,
303-04 (1970). We find that a rational fact-finder, when viewing
the evidence in the light most favorable to the prosecution,
could conclude that under either alternative, defendant used a
"bludgeon" during the course of the kidnaping.

Lastly, even if we were to accept defendant's argument that
the approach taken by the supreme court in Fink sets forth the
sole and exclusive definition of "bludgeon" (a bludgeon is a
short stick used as a weapon usually having one thick, heavy or
loaded end), a rational fact-finder could nevertheless conclude
that either a gun or a piece of wooden molding comports with this
more limited interpretation. We additionally recognize that the
court qualified its holding in Fink, stating that bludgeons
usually have one thick, heavy or loaded end.

For the foregoing reasons, we affirm the judgment of the
trial court.

Affirmed.

TULLY, J., with O'BRIEN, P.J., and GALLAGHER, J., concurring.

6

STATE OF ILLINOIS          )
                           )
                           )
                           )
COUNTY OF COOK             )

### IN THE CIRCUIT COURT OF COOK COUNTY, ILLINOIS
### FIRST JUDICIAL COURT CRIMINAL DIVISION

PEOPLE OF THE STATE OF ILLINOIS    )          CASE NO: <u>00CR14045</u>
       Plaintiff                )
                                   )
                                   )          HONORABLE JUDGE
                                   )          STANLEY SACKS—PRESIDING
                                   )
-v.-                               )          ⟵ F I L E D
                                   )
                                   )          FEB 1 6 2006
KARLA SULTON                       )
       Petitioner              )          CLERK OF CIRCUIT COURT

### PETITION FOR POST CONVICTION

Now comes the Petitioner, Karla Sulton, acting herein pro se and respectfully moves this Honorable Court for relief pursuant to the Illinois Post Conviction Act 725 ILCS 5/122-1 et. seq., (West Law 1998). In further support of this, it is respectfully submitted:

      Petitioner, Karla Sulton, is presently incarcerated at Lincoln Correctional Center in Lincoln, Illinois, P.O. Box 549 Lincoln, IL 62656. Registration Number Is R36246. Petitioner is currently serving a sentence of twelve (12) years. Pursuant to the Truth and Sentencing Act. Sentence rendered by the Honorable Stanley Sacks.

On Post Conviction the petitioner concedes the evidence established to affirm this conviction is unconstitutional. This petitioner embraces its question of law and fact. It is petitioner's position as to questions of law, she can evidence them by citing appropriate authorities which are included. Issues not brought out in the trial. Substantially, not a matter of record.

Petitioner was charged upon indictment with one (1) count of aggravated kidnapping with a dangerous weapon ( a bludgeon), one (1) count of aggravated kidnapping with a weapon ( a handgun). At trial, upon a finding a guilty, petitioner was convicted of aggravated kidnapping with a dangerous weapon (a bludgeon), and not guilty of aggravated kidnapping with a weapon ( a handgun). However, the alleged bludgeon was in fact presented to be the handgun. In conjunction with the finding of not guilty of aggravated kidnapping while armed with a weapon (a handgun), the jury was allowed the necessity defense. In Illinois a Constitutional Challenge to a statute can be raised at anytime. People v. Wooster 188 Ill. 2d. 500, 502 also see People v. Bryant 128 Ill. 2d. 448, 539 N.E. 2d. 1221-1224, (Ill. 1989). The void ab initio doctrine provides that a constitutionality of a statute can be challenged at anytime.

Petitioner now states the following issues:

    1. Petitioner was deprived of her 6th Amendment right to effective appellate

EXHIBIT B

Petition for Post Conviction
Page 2
Karla Sulton R36246

assistance of counsel.

2. Petitioner's 5th Amendment Right to Due Process was violated as she was convicted and sentenced for a crime that doesn't exist from a "Legally Inconsistent Verdict."

3. Petitioner's sentence and conviction are void because the sentence and conviction are the result of a legally inconsistent verdict.

4. Issues that could have, but were not raised on direct appeal, because of incompetency of appellate counsel may be raised later in a Post Conviction.

5. Petitioner's constitutional due process right is currently being violated by the courts denial of her trial transcripts (see attached).

## ARGUMENTS

Petitioner now states the following arguments:

1. Petitioner was deprived of her 6th Amendment right to effective appellate assistance of counsel. (see pet. - Ex. A)

    a. Petitioner was denied her right to consultation and right to participate in strategy for her appeal. U.S.C.A. Const. Amend. 6. People v. Anderson App. 1 Dist. 1995 210 Ill. Dec. 490.

    Due process clause of Fourteenth Amendment guarantees criminal defendant effective assistance of counsel on first appeal as a right. U.S.C.A. Const. Amend. 6, 14. U.S. ex rel. Bradley v. Hartigan, 612 F. Supp. 795. Trial counsel has obligation to perfect or prosecute defendants direct appeal as of right, once that defendant has requested an appeal: counsel's failure to meet this obligation creates presumption of ineffective assistance, a violation of due process. U.S.C.A. Const. Amends. 5 and 6. Almond v. U.S. 854 F. Supp 439.

    b. Petitioner had no contact nor correspondence with counsel, Stanley Hill, the date she was sentenced on May 23, 2001 until she received letter from counsel on July 5, 2003 that her appeal was denied.

    c. Petitioner was not made aware of issues counsel raised in her appeal, so therefore could not consent to issues raised on appeal.

    d. Petitioner's family informed counsel, Stanley Hill, when they paid the fee for the appeal that petitioner needed to speak with counsel. Counsel told petitioner's family that he would get in contact with petitioner, but counsel failed to. Petitioner's family made numerous visits and phone calls to counsel's office concerning contact with petitioner.

C   35

Petition for Post Conviction
Page 3
Karla Sulton R36246

    e. Petitioner has yet to see a copy of the brief submitted on her
       appeal, or the arguments made or issues raised.

2. Appellate counsel failed to argue patently meritorious issues on direct
   appeal. People v. Harre, App. 5 Dist. 1994, 200 Ill. Dec. 832, 263
   Ill. App. 3d 447. People v. Hightower, 196 Ill. Dec. 353, 629 N.E. 2d
   1197. People v. Hernandez, 218 Ill. Dec. 800, 669 N.E. 2d 1326.
   People v. Franzen, 190 Ill. Dec. 847, 622 N.E. 2d 877. People v. Smith,
   260 Ill. Dec. 462, 761 N.E. 2d 306.

    a. No showing of prejudice is required where counsel fails to perfect
       a defendant's appeal, for purposes of sustaining a claim for
       ineffective counsel, prejudice is presumed. People v. Mena, App. 1
       Dist. 2003, 275 Ill. Dec. 315, 337 Ill. App. 3d 868, 792 N.E. 2d 790.

    b. Defendant who claims that appellate counsel was ineffective for
       failing to raise an issue on appeal must allege facts showing such
       failure was objectively unreasonable and that counsel's decision
       prejudiced defendant. U.S.C.A. Const. Amend. 6. People v. Makiel,
       294 Ill. Dec. 319, 380 N.E. 2d 731, 358 Ill. App. 3d 102.

    c. Appellate counsel failed to raise issue of "legally inconsistent
       verdicts." Verdicts are legally inconsistent if they involve the
       conclusion that the same essential element or elements of each crime
       were found to both exist and not exist. People v. Murray, 34 Ill. App.
       3d 521, 531, 340 N.E. 2d 186.

       i. Petitioner was found not guilty of "aggravated kidnapping with a
         firearm," but was found guilty of "aggravated kidnapping while
         armed with a dangerous weapon, a "bludgeon." The State contents
         the bludgeon was the firearm. Petitioner's defense at trial
         was necessity. Petitioner admitted having firearm in her possession.
         The jury came back with a question during deliberations concerning
         the reason defendant had firearm in her possession. Would that
         make her guilty or not guilty. Judge Sacks wouldn't answer the
         question. He sent the jury back to continue to deliberate.
         Defense of "necessity" goes to defendant's state of mind during
         one act, one crime. This goes to mental state of defendant.
         The split verdicts are mutually inconsistent culpable mental states.
         People v. Fornear, 224 Ill. Dec. 12, 680 N.E. 2d 1383 - - statute
         that encourages compromised verdicts based on jurors misunderstanding
         is violation of due process. People v. Robles, 247 Ill. Dec. 974,
         733 N.E. 2d 438.

       ii. The question of a defendant's state of mind at the time of the crime
         is a question of fact to be determined by the jury. People v.
         Pertz, 242 Ill. App. 3d 864, 903, 183 Ill. Dec. 77, 610 N.E. 2d
         1321, 1346. People v. Hulitt, 297 Ill. Dec. 661, 838 N.E. 2d 148.
         Petitioner was found not guilty of aggravated kidnapping with a
         firearm by reason of necessity. The jury's finding that defendant's
         mental state warranted necessity of her participation in the crime,
         negated her cupability in all parts of the crime, under the one crime,
         one act doctrine.

Petition for Post Conviction
Page 4
Karla Sulton R36246

## DUE PROCESS VIOLATIONS

Petitioner states as follows:

1. Petitioner's 5th and 14th constitutional right to due process was violated. While attorney is considered to be manager of the case, there are certain ultimate decisions involving fundamental rights, that can only be made by defendant regardless of competent counsel's advise to the contrary. People v. Anderson, App. 1 Dist. 1994, 204 Ill. Dec. 367, 266 Ill. App. 3d 947.

   a. After the verdicts had been returned, defendant's trial counsel, Stanley Hill, informed defendant that before the trial began, the state had made a offer of a plea. If defendant pleaded guilty to aggravated kidnapping with a firearm, a sentence recommendation of six (6) years for aggravated kidnapping and fifteen (15) years for the firearm enhancement that was in effect at the time. I had no knowledge of this offer until the jury had completed their deliberations.

   b. Petitioner's 5th and 14th constitutional right to due process were violated by trial judge when he refused to allow letters written to defendant to be entered into evidence. Interfering with a defendant's right to present witnesses and evidence interferes with defendant's right to due process and fundamentally fair trial. People v. Miller, App. 1 Dist. 1997, 225 Ill. Dec. 464, 291 Ill. App. 3d 320, 683 N.E. 2d 967.

   c. While defendant and her husband/co-defendant were in Cook County Jail awaiting trial, defendant's husband Charles Sulton, wrote several letters to defendant. In the letters Mr. Sulton state repeatedly that defendant should have allowed him to kill the victim. At the time of the crime, Mr. Sulton was on parole for aggravated kidnapping, armed robbery, and murder. These letter from Mr. Sulton would have bolstered defendant's claim of the necessity of her actions at the time the crime was committed.

   d. Petitioner's 5th and 14th constitutional rights were violated and petitioner was convicted for a crime that doesn't exist. 155 Ill. Dec. 586, 569 N.E. 2d 1197.

      i. When defendant was acquitted of aggravated kidnapping with a firearm, the legally inconsistent verdict rendered the aggravated kidnapping, while armed with a bludgeon, which the state claims was the firearm, the firearm does not exist.

2. Petitioner's 5th and 14th constitutional rights to due process were and still are being violated by the denial of her transcripts.

   a. Petitioner's family made several trips to the Circuit Clerk of Cook County's office between September, 2003 and March, 2004, in an attempt to pay for a copy of petitioner's trial transcripts, so that petitioner

Petition for Post Conviction
Page 5
Karla Sulton R36246

could work on her Post Conviction, after the denial of her appeal in
June, 2003. At first her family was told the Clerk's office would
locate the transcripts. After several months petitioner's family was told
the stenographer couldn't be located and they could not produce a record
of the court proceedings. The press and the public have a common law right
of access to judicial documents. Media General Operations, Inc. v.
Buchanan, 417 E. 3d 424.

b. In April, 2004 petitioner filed a Motion for Trial Transcripts and Common
Law Records. The motion was denied by Judge Stanley Sacks on November 23,
2005 (SEE EXHIBIT B). Defendant is entitled to free transcripts of his/
her own trial. People v. Rial, App. 3 Dist. 1991, 158 Ill. Dec. 29,
214 Ill. App. 3d 420, 573 N.E. 2d 842.

c. Denial of transcripts has caused a hardship in petitioner's effort in
preparing her Post-Convition. Petitioner can't raise issues such as
improper remarks in closing statements, because petitioner has no record
of what was said. Denial of transcripts has limited petitioner's access
to the courts. Pennsylvania v. Finley, 107 S. Ct. 1990, 481 U.S. 551,
95 L. Ed 2d 539 on remand, Com v. Finley, 550 A. 2d 213, 379 Pa. Super
390. Petitioner lacks sufficient tools for meaningful access to courts.

Petition for Post Conviction
Page 6
Karla Sulton R36246

## RELIEF REQUESTED

Petitioner seeks a declaration from the Honorable Court that petitioner's rights have been violated pursuant to the 5th, 6th, and 14th amendments of the United States Constitution.

Petitioner seeks dismissal of charges and release from custody or in the alternative, be granted a hearing for Reconsideration of Sentence.

Respectfully submitted,

*Karla Sulton*

Karla Sulton
R36246
P.O. Box 549
Lincoln, IL  62656

C    39

## IN THE FIRST JUDICIAL CIRCUIT
## COOK COUNTY, ILLINOIS

Karla Sulton                          )
      Petitioner/Defendant    )
                    )
      vs.                            )      CASE NO. 00CR14045
                    )
                    )                            FILED
People of the State of                )
Illinois                              )
      Respondent                    )                        FEB 1 3 2008
                    )
                                      CLERK OF CIRCUIT COURT

---

### JUDICIAL NOTICE
### FACT FINDING AND CONCLUSION OF LAW

---

Now comes Petitioner, Karla Sulton, Pro Se and pursuant to 735 ILCS 5/8-1003
and 5/8-1005, respectfully move this Honorable Court provide her with Judicial
Notice and the facts relied upon as well as, the conclusions derived there from,
as regards to the attached documents, 735 ILCS 5/8-1003, Common Law and Statutes
--every court of this state shall take judicial notice of the Common Law and
Statutes of every state, territory, and other jurisdiction of the United States.
735 ILCS 5/8-1005, Ruling Reviewable --the determination of such laws shall be
made by the court and not the jury, and shall be reviewable.

Wherefore, the Petitioner prays this Honorable Court take judicial notice of the
case law cited herein and make fact findings and provide her with conclusions
of law in compliance with the directives of the Statutes and case law cited,
and grant an evidentiary hearing or proper remedy as to each issue and/or
elements therein.

*Karla Sulton*

Karla Sulton, Pro-Se
R36246
P.O. Box 549
Lincoln, IL    62656

Petition for Post Conviction
Karla Sulton   R36246

## PETITIONER'S LIST OF EXHIBITS

1)     Pet. Ex A are copies of all legal mail received from Lincoln Correctional
        Center's mailroom.  The receipts were received by me for this petition.
        Dates: May 24, 2001 until the present.  Only one letter was received from
        counsel, Stanley Hill---11 pages.

2)     Pet. Ex B letter of denial of Trial Transcripts dated December 5, 2005
        ---1-page.

STATE OF ILLINOIS   )
                     )
                     )  SS:  Petition for Post Conviction
COUNTY OF __Logan__   )

## AFFIDAVIT

I, _____Karla Sulton -- R36246_____ , depose and state that as to the matters
herein, I am the _____Petitioner_____ in the above entitled cause; that I have
read the foregoing document, by my signature, and that the statements contained
therein are true in substance and in fact.

The copies of legal mail received by petitioner reflects a complete record of all
legal mail to the best of her knowledge. The copies were requested and received by
petitioner from the Lincoln Correctional Center mailroom. (EXHIBIT A)

9/18/02 - - Prisoner Review Board
12/28/02 - - Prisoner Review Board

4/5/03 - - Cook Co. States Atty
7/5/03 - - Stanley L. Hill and Associates - Attorney
4/7/04 - - University Research Services
4/12/04 - - University Research Services
4/10/04 - - University Research Services
8/25/04 - - Uptown Peoples Law Center
6/16/05 - - Prisoner Review Board
8/16/05 - - Kevin Scott, Esq.

_Karla Sulton_
AFFIANT - - Karla Sulton R36246

Subscribed and sworn to before me this
__8__ day of __February__ , __2006__
_Tracy Hill_
NOTARY PUBLIC - Tracy Hill
__4-13-2009__
EXPIRATION OF COMMISSION

"OFFICIAL SEAL"
Tracy L. Hill
Notary Public, State of Illinois
My Commission Exp. 04/13/2009

C    42

## EXHIBIT A

### LEGAL MAIL RECEIPTS --11 PAGES



**Illinois**
Department of
**Corrections**

George H. R
Governor

Donald N. Sny
Director

Lincoln Correctional Center / 1098 1350th Street, P.O. Box 549 / Lincoln , IL 62656 / Telephone: (217) 735-5411 / TDD: (80

2- 2 - 5

M E M O R A N D U M

DATE: _9/18/02_

TO:      Mail Room

FROM:    _Sulton   R36246_
                   Inmate Name and Number

SUBJECT: Legal Mail

On _____9/18_____ legal mail was delivered
to me from:

_Peoria_
_3A E_
_Safe_
_6270_

and was opened and inspected in and was in my presence.  The correspondence
was not read by the officer.

_____
Inmate Signature

_R36246_
Inmate Number

_____
Employee Signature

_C/o  Toso_
Employee Title

*******************************************************************************

NOTE: Checks or money orders will be removed from the envelope, processed, a
      forwarded immediately to Trust Fund.

DCA/17723
IL426-99654
(R 8/88)

C     4 4

# Illinois
## Department of
# Corrections

*2e*

George H. R
Governor

Donald N. Snyc
Director

Lincoln Correctional Center / 1096 1350ᵗʰ Street, P.O. Box 549 / Lincoln , IL 62656 / Telephone: (217) 735-5411 / TDD: (800

M E M O R A N D U M

DATE: *12-28-02*

TO:        Mail Room

FROM:      *Sutton R36246*
           Inmate Name and Number

SUBJECT:   Legal Mail

On _____ *Dec 28th* ____ _____ legal mail was delivered

to me from: _____

_____

_____

_____

and was opened and inspected _____ presence. The correspondence
was not read by the Officer.

*Sutton R3/6246*
Inmate Signature

_____
Inmate Number

*Stembel*
Employee Signature

*c/o 9050*
Employee Title

*************************************************************************

NOTE: Checks or money orders will be removed from the envelope, processed, and
forwarded immediately to Trust Fund.

DCA/17723
IL426-99654
(R 8/88)

1a

**ILLINOIS DEPARTMENT OF CORRECTIONS**
**LINCOLN CORRECTIONAL CENTER**
**LEGAL MAIL RECEIPT**

On _April 5_ 20 _03_, legal mail was delivered to _Sulton R 36246_
(Inmate Name and Number)

This mail was sent by: _Cook Co. States Atty_
_Daley Center Rm 301_
_Chicago IL 60602_

My signature below acknowledges that this item was opened and inspected for contraband in my presence and that the corresp[o]
was not read by the Officer. I also understand that any checks or money orders will be removed from the envelope, processed,
forwarded immediately to Trust Fund.

_Sulton R 36246_                          _Jo Stanley_  9050
Inmate Name and Number                    Witnessed by: Employee Signature and Title

Distribution:
Original – Mail Room
Copy – Inmate

(1
(Replaces DCA/1

*Printed on Recycled Paper*

*3a*

**ILLINOIS DEPARTMENT OF CORRECTIONS**
<u>LINCOLN CORRECTIONAL CENTER</u>
**LEGAL MAIL RECEIPT**

On ___July 5___, 20 _03_, legal mail was delivered to ___Sulton R 36246___
                                                        (Inmate Name and Number)

This mail was sent by: ___Stanley L Hill & Assoc. Atty___
                       ___10 South LaSalle Street___
                       ___Chicago IL    60603___

My signature below acknowledges that this item was opened and inspected for contraband in my presence and that the correspondence was not read by the Officer. I also understand that any checks or money orders will be removed from the envelope, processed, and forwarded immediately to Trust Fund.


___Sulton R36246___                    ___o/s Stambaugh 9050___
Inmate Name and Number                 Witnessed by: Employee Signature and Title


Distribution:
Original – Mail Room
Copy – Inmate

LIN 0226
(Eff. 02/03)
(Replaces DCA/110-17723)

*Printed on Recycled Paper*

C    47

Law Offices
**STANLEY L. HILL & ASSOCIATES, P.C.**
Suite 1301
10 South LaSalle Street
Chicago, Illinois 60603

Telephone:    312.917.8888
Facsimile:    312.781.9401
Email:        stanhill@megsinet.net

July 3, 2003

Ms. Karla Sulton
ID# R36246
P.O. Box 549
Lincoln, Illinois 62656

> Re: The People of the State of Illinois v. Karla Sulton
>     Case No. 1-01-2906

Dear Karla:

I regret to inform you that the Illinois Appellate Court affirmed your conviction on June 27, 2003. I talked with your father today and explained it is unlikely that the Illinois Supreme Court will accept the case for review because of the limited number of cases it decides to consider. Should you and your father decide you wish to appeal the case anyway, please let me know by July 10, 2003.

I am surprised by the decision. I certainly expected a different result.

Very truly yours,

Stanley L. Hill

Enclosure

cc: Mr. Joseph Scott
    21005 London Drive
    Olympia Fields, Illinois 60461

**ILLINOIS DEPARTMENT OF CORRECTIONS**
<u>**LINCOLN CORRECTIONAL CENTER**</u>
**LEGAL MAIL RECEIPT**

On ___4-7___ 20 _04_, legal mail was delivered to _Sulton R36246_
                                              (Inmate Name and Number)

This mail was sent by:   _Univ. Research Services_
                         _P.O Box 914_
                         _Birmingham MI 48012_

My signature below acknowledges that this item was opened and inspected for contraband in my presence and that the correspondence was not read by the Officer. I also understand that any checks or money orders will be removed from the envelope, processed, and forwarded immediately to Trust Fund.

_Sulton, R36246_                           _[signature]_
Inmate Name and Number                     Witnessed by: Employee Signature and Title

Distribution:
Original – Mail Room
Copy - Inmate

LIN 0226
(Eff. 02/03)
(Replaces DCA/110-17723)

*Printed on Recycled Paper*

**ILLINOIS DEPARTMENT OF CORRECTIONS**
<u>LINCOLN CORRECTIONAL CENTER</u>
**LEGAL MAIL RECEIPT**

On _April 12_ 20_04_, legal mail was delivered to _Sulton R36246_
(Inmate Name and Number)

This mail was sent by:  _University Research Services_
_P.O. Box 914_
_Birmingham MI 48012_

My signature below acknowledges that this item was opened and inspected for contraband in my presence and that the correspondence was not read by the Officer. I also understand that any checks or money orders will be removed from the envelope, processed, and forwarded immediately to Trust Fund.

_Sulton R36246_
Inmate Name and Number

_C/o Benedict 8891_
Witnessed by:  Employee Signature and Title

Distribution:
Original – Mail Room
Copy – Inmate

LIN 0226
(Eff. 02/03)
(Replaces DCA/110-17723)

*Printed on Recycled Paper*

**ILLINOIS DEPARTMENT OF CORRECTIONS**
<u>**LINCOLN CORRECTIONAL CENTER**</u>
**LEGAL MAIL RECEIPT**

On _____April 19th_____ 20_04_, legal mail was delivered to _____F/n Sulton R36246_____
(Inmate Name and Number)

This mail was sent by:    University Research Services, LLC.
P.O. Box 914
Birmingham, Michigan 48012

My signature below acknowledges that this item was opened and inspected for contraband in my presence and that the correspo
was not read by the Officer. I also understand that any checks or money orders will be removed from the envelope, processed,
forwarded immediately to Trust Fund.


_____Sulton R36246_____
Inmate Name and Number

_____C/o Christine 12027_____
Witnessed by: Employee Signature and Title


Distribution:
Original – Mail Room
Copy – Inmate

ILLINOIS DEPARTMENT OF CORRECTIONS
<u>LINCOLN CORRECTIONAL CENTER</u>
LEGAL MAIL RECEIPT

On _____ 8-25 ___ 20 04, legal mail was delivered to _Sulton  R36246_

(Inmate Name and Number)

This mail was sent by:   _Uptown Peoples Law Center_
_4404 N. Broadway_
_Chicago, Ill. 60640_

My signature below acknowledges that this item was opened and inspected for contraband in my presence and that the correspondence was not read by the Officer. I also understand that any checks or money orders will be removed from the envelope, processed, and forwarded immediately to Trust Fund.


_Kaila Sulton_
Inmate Name and Number

_c/o M___ 8891_
Witnessed by:  Employee Signature and Title

Distribution:
Original – Mail Room
Copy – Inmate

LIN 0226
(Eff. 02/03)
(Replaces DCA/110-17723)

*Printed on Recycled Paper*

**ILLINOIS DEPARTMENT OF CORRECTIONS**
**LINCOLN CORRECTIONAL CENTER**
**LEGAL MAIL RECEIPT**

On ___June 16___ 20 _05_, legal mail was delivered to ___Sulton R36246___
<span style="padding-left:20em">(Inmate Name and Number)</span>

This mail was sent by: ___P.R.B___
___319 E. Madison St.___
___Springfield IL 62701___

My signature below acknowledges that this item was opened and inspected for contraband in my presence and that the correspondence was not read by the Officer. I also understand that any checks or money orders will be removed from the envelope, processed, and forwarded immediately to Trust Fund.


___Sulton R36246___
Inmate Name and Number

c/o ___Staubach___ 9OSD
Witnessed by:  Employee Signature and Title


Distribution:
Original – Mail Room
Copy – Inmate

LIN 0226
(Eff. 02/03)
(Replaces DCA/I10-17723)

*Printed on Recycled Paper*

**ILLINOIS DEPARTMENT OF CORRECTIONS**
**LINCOLN CORRECTIONAL CENTER**
**LEGAL MAIL RECEIPT**

On __8/16/05__ 20___, legal mail was delivered to __Sutton    R36246__
(Inmate Name and Number)

This mail was sent by:
Kevin Scott Esg.
4049 Ely Pl. SE
Washington D.C. 20019

My signature below acknowledges that this item was opened and inspected for contraband in my presence and that the correspondenc was not read by the Officer. I also understand that any checks or money orders will be removed from the envelope, processed, and forwarded immediately to Trust Fund.

__Sutton R36246__
Inmate Name and Number

__Witnessed by: Employee Signature and Title__

Distribution:
Original – Mail Room
Copy – Inmate

LIN
(Eff.
(Replaces DCA/110-

## EXHIBIT B

MEMO FROM THE CLERK'S OFFICE
CRIMINAL DIVISION

DECEMBER 1, 2005 - - 1 PAGE

C    ɔ 5



# OFFICE OF THE CIRCUIT COURT CLERK OF COOK COUNTY

### CRIMINAL BUREAU
CRIMINAL DIVISION
Room 526
2650 S. California Ave
Chicago, Illinois 60608
(773) 869-3141
FAX (773) 869-4444

**DOROTHY BROWN**

CLERK OF THE COURT

Date: _December 15, 2005_

_Karla Sulton #R-36246_

_Lincoln C.C._

_P.O. Box 549_

_Lincoln, IL 62656_

Case Number: _00CR14045-01_

Dear _Karla Sulton,_

Please be advised that on _11/23/05_

The Honorable Judge _Stanley J. Sacks_ denied

your motions for _Trial Transcripts &_

_Common Law Record, to proceed in_

If you have any further questions or requests, please

feel free to notify our office.



Sincerely,

CRIMINAL DIVISION
MOTION DEPARTMENT

COMMENTS: _Forma Pauperis & application_
_to sue or defend as a poor person._
_Off Call, Records were received by the_
_State Appellate Defender on 11/10/05._



MISSION STATEMENT

The Mission of the office of the Clerk of the Circuit Court of Cook County is to serve the citizens of Cook County and the participants of the system in a timely, efficient and ethical manner. All services, information and court records will be provided with courtesy and so

STATE OF ILLINOIS )
                  )  SS:  Petition for Post Conviction
COUNTY OF __Logan__ )

## AFFIDAVIT

I, __Karla Sulton - R36246__ , depose and state that as to the matters
herein, I am the ____Petitioner____ in the above entitled cause; that I have
read the foregoing document, by my signature, and that the statements contained
therein are true in substance and in fact.

Petitioner lacks a record of legal phone calls.  Petitioner requested a record

of all legal phone calls since her incarceration at Lincoln Correctional Center.

The request was denied.

On or about January 17, 2006, petitioner spoke with Mr. Boyd, Clinical Services

Supervisor.  Mr. Boyd told petitioner that the only way to receive a record of

attorney phone calls was through a court order.  Petitioner contends she has never

engaged in any phone calls reference legal matters the entire time of this

Incarceration here at Lincoln Correctional Center.

_Karla Sulton_
AFFIANT - Karla Sulton R36246

Subscribed and sworn to before me this
__8__ day of _____, 2006
_____
NOTARY PUBLIC  -  Tracy Hill
__4 | 13 | 2009__
EXPIRATION OF COMMISSION

"OFFICIAL SEAL"
Tracy L. Hill
Notary Public, State of Illinois
My Commission Exp. 04/13/2009

IN THE CIRCUIT COURT FOR THE _____First_____ JUDICIAL COURT
_____Cook_____     COUNTY, ILLINOIS

Karla Sulton ,                          )
    Petitioner,                        )
                                       )     No.: ___00CR14045___
v.                                       )
People of the State of Illinois ,        )
    Respondent.                        )

------------------------------------------------------------

## APPLICATION TO SUE OR DEFEND AS A POOR PERSON

Applicant, ___Karla Sulton___, respectfully requests the Court, pursuant to Illinois
[ see 735 ILCS 5/5-105] and Rule 298 of the Illinois Supreme Court, to grant (him/her)
leave to (sue/defend) as a poor person; in support applicant states that the following facts
are true in substance and in fact:

1. I am the (Petitioner/~~Respondent~~) in the above captioned legal proceedings.

2. I am a poor person and unable to (~~prosecute~~/defend) this action and am unable to
pay the costs, fees and expenses of this action.

3. My occupation or means of subsistence:
    (a) I am not currently employed due to my imprisonment at ___Lincoln___
    Correctional Center but I receive (a state stipend/nominal wages) of $ _28.80_
    per month.
    (b) The amount and source of all other income or support are:
    My family sends money when they are able.

4. My total income for the preceding year was $ ____240.00____.

5. The sources and amount of income expected by me hereafter are:
    State pay and whatever my family can send

6. The nature and current value of any property, real or personal, owned by me:
    (a) Real Estate:___None___
        value:___$0.00___
    (b) Motor Vehicle:___None___
        value:___$0.00___
    (c) Cash, saving, checking, etc.___None___
        value:___$0.00___
    (d) Prison trust account:___$287.61___
        value:___$287.61___
    (e) Other (eg., T.V., etc.)___T.V., Fan, Radio, Hot Pot, and Lamp___
        value:___$150.00___

7. No applications for leave to sue or defend as a poor person were filed by me or on
my behalf during the preceding year, except as follows:
    April, 2004 I filed to receive my trial transcripts.

8. I believe in good faith that I have a meritorious (claim/~~defense~~).

        _Karla Sulton_
        (Your Signature)
        Type or print name ___Karla Sulton___
        Register Number: ___R36246___
        ___Lincoln___ Correctional Center
        Box ___549___
        ___Lincoln___, Illinois___62656___
        (Petitioner/~~Respondent~~), Pro Se

Revised Jan 2002

C   58

| | |
|---|---|
| Date: 1/24/2006 | |
| Time: 2:52pm | |
| d_list_inmate_trans_statement_composite | |

**Lincoln Correctional Center**
**Trust Fund**
Inmate Transaction Statement

Page 1

REPORT CRITERIA  -  Date: 06/01/2005 thru End;     Inmate: R36246;     Active Status Only ? : No;     Print Restrictions ? : Yes;     Transaction Type: All Transaction Types;     Print Furloughs / Restitutions ? : Yes;     Include Inmate Totals ? : Yes;     Print Balance Errors Only ? : No

**Inmate: R36246 Sulton, Karla**                              **Housing Unit: LIN-1B-06-05**

| Date | Source | Transaction Type | Batch | Reference # | Description | Amount | Balance |
|---|---|---|---|---|---|---|---|
| | | | | | **Beginning Balance:** | | 352.64 |
| 06/01/05 | Point of Sale | 60 Commissary | 152717 | 369130 | Commissary | -21.52 | 331.12 |
| 06/01/05 | Point of Sale | 60 Commissary | 152717 | 369164 | Commissary | -1.14 | 329.98 |
| 06/08/05 | Point of Sale | 60 Commissary | 159741 | 370026 | Commissary | -28.22 | 301.76 |
| 06/10/05 | Disbursements | 80 Postage | 161302 | Chk #73320 | 800277263, Inmate Benefit Fund, Inv. Date: 06/08/2005 | -.60 | 301.16 |
| 06/10/05 | Payroll | 20 Payroll Adjustment | 161114 | | P/R month of 05/2005 | 19.20 | 320.36 |
| 06/10/05 | Point of Sale | 60 Commissary | 161717 | 370456 | Commissary | -1.14 | 319.22 |
| 06/15/05 | Point of Sale | 60 Commissary | 166717 | 371147 | Commissary | -30.21 | 289.01 |
| 06/16/05 | Disbursements | 80 Postage | 167302 | Chk #73391 | 800278022, Inmate Benefit Fund, Inv. Date: 06/14/2005 | -.37 | 288.64 |
| 06/16/05 | Mail Room | 01 MO/Checks (Not Held) | 167281 | 08255199510 | Scott, Jessie | 50.00 | 338.64 |
| 06/16/05 | Mail Room | 01 MO/Checks (Not Held) | 167281 | 08255199508 | Scott, Jessie | 50.00 | 388.64 |
| 06/22/05 | Point of Sale | 60 Commissary | 173717 | 372277 | Commissary | -29.93 | 358.71 |
| 06/22/05 | Point of Sale | 60 Commissary | 173717 | 372285 | Commissary | -.55 | 358.16 |
| 06/29/05 | Point of Sale | 60 Commissary | 180741 | 373147 | Commissary | -45.46 | 312.70 |
| 07/08/05 | Point of Sale | 60 Commissary | 189741 | 373853 | Commissary | -26.51 | 286.19 |
| 07/11/05 | Point of Sale | 60 Commissary | 192741 | 373976 | Commissary | -9.99 | 276.20 |
| 07/12/05 | Point of Sale | 60 Commissary | 193721 | 374077 | Commissary | 9.99 | 286.19 |
| 07/12/05 | Disbursements | 80 Postage | 193302 | Chk #73547 | 800600381, Inmate Benefit Fund, Inv. Date: 07/12/2005 | -1.11 | 285.08 |
| 07/12/05 | Payroll | 20 Payroll Adjustment | 193114 | | P/R month of 06/2005 | 19.20 | 304.28 |
| 07/12/05 | Mail Room | 01 MO/Checks (Not Held) | 193236 | 8255167503 | Scott, Jessie | 30.00 | 334.28 |
| 07/12/05 | Mail Room | 01 MO/Checks (Not Held) | 193236 | 8255167492 | Scott, Jessie | 50.00 | 384.28 |
| 07/12/05 | Mail Room | 01 MO/Checks (Not Held) | 193236 | 8255167481 | Scott, Jessie | 50.00 | 434.28 |
| 07/15/05 | Point of Sale | 60 Commissary | 196721 | 374919 | Commissary | -41.56 | 392.72 |
| 07/15/05 | Point of Sale | 60 Commissary | 196721 | 374925 | Commissary | .00 | 392.72 |
| 07/22/05 | Point of Sale | 60 Commissary | 203741 | 376090 | Commissary | -21.47 | 371.25 |
| 08/01/05 | Point of Sale | 60 Commissary | 213721 | 376983 | Commissary | -35.91 | 335.34 |
| 08/08/05 | Point of Sale | 60 Commissary | 220741 | 377817 | Commissary | -25.78 | 309.56 |
| 08/11/05 | Mail Room | 01 MO/Checks (Not Held) | 223281 | 08255825436 | Scott, Jessie | 50.00 | 359.56 |
| 08/11/05 | Mail Room | 01 MO/Checks (Not Held) | 223281 | 08255825447 | Scott, Joseph P | 50.00 | 409.56 |
| 08/12/05 | Payroll | 20 Payroll Adjustment | 224102 | | P/R month of 07/2005 | 19.20 | 428.76 |
| 08/18/05 | Point of Sale | 60 Commissary | 230721 | 379479 | Commissary | -31.51 | 397.25 |
| 08/24/05 | Point of Sale | 60 Commissary | 236741 | 380353 | Commissary | -18.63 | 378.62 |
| 08/25/05 | Point of Sale | 60 Commissary | 237741 | 380548 | Commissary | -28.57 | 350.05 |
| 09/02/05 | Point of Sale | 60 Commissary | 245741 | 381355 | Commissary | -38.49 | 311.56 |
| 09/02/05 | Point of Sale | 60 Commissary | 245721 | 381370 | Commissary | -3.73 | 307.83 |
| 09/08/05 | Point of Sale | 60 Commissary | 251721 | 381977 | Commissary | -4.02 | 303.81 |
| 09/12/05 | Point of Sale | 60 Commissary | 255741 | 382309 | Commissary | -30.51 | 273.30 |
| 09/12/05 | Point of Sale | 60 Commissary | 255721 | 382328 | Commissary | -7.24 | 266.06 |
| 09/12/05 | Mail Room | 01 MO/Checks (Not Held) | 255281 | 5447937713 | Scott, Joseph | 20.00 | 286.06 |
| 09/12/05 | Mail Room | 01 MO/Checks (Not Held) | 255281 | 5447937710 | Scott, Joseph | 50.00 | 336.06 |
| 09/12/05 | Mail Room | 01 MO/Checks (Not Held) | 255281 | 5447937708 | Scott, Joseph | 50.00 | 386.06 |
| 09/12/05 | Mail Room | 01 MO/Checks (Not Held) | 255281 | 5447937712 | Scott, Joseph | 50.00 | 436.06 |
| 09/12/05 | Mail Room | 01 MO/Checks (Not Held) | 255281 | 5447937709 | Scott, Joseph | 50.00 | 486.06 |
| 09/12/05 | Mail Room | 01 MO/Checks (Not Held) | 255281 | 5447937707 | Scott, Joseph | 50.00 | 536.06 |

Date: 1/24/2006

Time: 2:52pm

d_list_inmate_trans_statement_composite

**Lincoln Correctional Center**
**Trust Fund**

Inmate Transaction Statement

Page 2

REPORT CRITERIA - Date: 06/01/2005 thru End;    Inmate: R36246;    Active Status Only ? : No;    Print
Restrictions ? : Yes;    Transaction Type: All Transaction Types;    Print Furloughs / Restitutions ? : Yes;    Include
Inmate Totals ? : Yes;    Print Balance Errors Only ? : No

**Inmate: R36246 Sulton, Karla**                                   **Housing Unit: LIN-1B-06-05**

| Date | Source | Transaction Type | Batch | Reference # | Description | Amount | Balance |
|---|---|---|---|---|---|---|---|
| 09/14/05 | Disbursements | 80 Postage | 257302 | Chk #73851 | 8006003641, Inmate Benefit Fun, Inv. Date: 09/07/2005 | -1.43 | 534.63 |
| 09/14/05 | Disbursements | 90 Medical Co-Pay | 257302 | Chk #73852 | 9006003583, DOC: 523 Fund Reim, Inv. Date: 09/07/2005 | -2.00 | 532.63 |
| 09/14/05 | AP Correction | 80 Postage | 257502 | Chk #73851 Voided | 8006003641 - Inmate Benefit Fu | 1.43 | 534.06 |
| 09/16/05 | Payroll | 20 Payroll Adjustment | 259102 | | P/R month of 08/2005 | 19.20 | 553.26 |
| 09/19/05 | Disbursements | 80 Postage | 262302 | Chk #73902 | 8006003641, Inmate Benefit Fun, Inv. Date: 09/07/2005 | -1.43 | 551.83 |
| 09/19/05 | Point of Sale | 60 Commissary | 262741 | 383302 | Commissary | -28.20 | 523.63 |
| 09/19/05 | Point of Sale | 60 Commissary | 262741 | 383304 | Commissary | -.82 | 522.81 |
| 09/22/05 | Mail Room | 01 MO/Checks (Not Held) | 265281 | 889462757 | Embery, Ann | 10.00 | 532.81 |
| 09/26/05 | Point of Sale | 60 Commissary | 269741 | 384528 | Commissary | -41.40 | 491.41 |
| 10/03/05 | Disbursements | 80 Postage | 276302 | Chk #74018 | 8006004853, Inmate Benefit Fun, Inv. Date: 09/27/2005 | -.60 | 490.81 |
| 10/03/05 | Disbursements | 80 Postage | 276302 | Chk #74018 | 8006004839, Inmate Benefit Fun, Inv. Date: 09/27/2005 | -.60 | 490.21 |
| 10/04/05 | Point of Sale | 60 Commissary | 277721 | 385393 | Commissary | -5.92 | 484.29 |
| 10/04/05 | Point of Sale | 60 Commissary | 277721 | 385395 | Commissary | -33.55 | 450.74 |
| 10/12/05 | Point of Sale | 60 Commissary | 285741 | 386496 | Commissary | -21.01 | 429.73 |
| 10/12/05 | Disbursements | 90 Medical Co-Pay | 285302 | Chk #74056 | 9008005058, DOC: 523 Fund Reim, Inv. Date: 09/28/2005 | -2.00 | 427.73 |
| 10/14/05 | Payroll | 20 Payroll Adjustment | 287114 | | P/R month of 09/2005 | 19.80 | 447.53 |
| 10/19/05 | Point of Sale | 60 Commissary | 292721 | 387595 | Commissary | -33.64 | 413.89 |
| 10/26/05 | Point of Sale | 60 Commissary | 299741 | 388768 | Commissary | -35.01 | 378.88 |
| 11/03/05 | Point of Sale | 60 Commissary | 307721 | 389621 | Commissary | -33.15 | 345.73 |
| 11/10/05 | Point of Sale | 60 Commissary | 314717 | 390593 | Commissary | -29.04 | 316.69 |
| 11/10/05 | Payroll | 20 Payroll Adjustment | 314114 | | P/R month of 10/2005 | 27.46 | 344.15 |
| 11/15/05 | Disbursements | 80 Postage | 319302 | Chk #74254 | 800606969, Inmate Benefit Fund, Inv. Date: 11/07/2005 | -.74 | 343.41 |
| 11/18/05 | Point of Sale | 60 Commissary | 322717 | 391854 | Commissary | -57.54 | 285.87 |
| 11/18/05 | Point of Sale | 60 Commissary | 322717 | 391856 | Commissary | -5.88 | 279.99 |
| 11/18/05 | Point of Sale | 60 Commissary | 322717 | 391864 | Commissary | 1.60 | 281.59 |
| 11/28/05 | Disbursements | 80 Postage | 332302 | Chk #74325 | 800608091, Inmate Benefit Fund, Inv. Date: 11/28/2005 | -.60 | 280.99 |
| 11/29/05 | Point of Sale | 60 Commissary | 333721 | 392992 | Commissary | -16.76 | 264.23 |
| 11/29/05 | Point of Sale | 60 Commissary | 333721 | 392994 | Commissary | -63.60 | 200.63 |
| 11/29/05 | Point of Sale | 60 Commissary | 333721 | 393001 | Commissary | -1.26 | 199.37 |
| 11/29/05 | Mail Room | 01 MO/Checks (Not Held) | 333236 | 8608704254 | Scott, Jessie | 50.00 | 249.37 |
| 12/08/05 | Payroll | 20 Payroll Adjustment | 342114 | | P/R month of 11/2005 | 28.80 | 278.17 |
| 12/12/05 | Disbursements | 90 Medical Co-Pay | 346302 | Chk #74439 | 900608322, DOC: 523 Fund Reimb, Inv. Date: 11/30/2005 | -2.00 | 276.17 |
| 12/12/05 | AP Correction | 90 Medical Co-Pay | 346502 | Chk #74439 Voided | 900608322 - DOC: 523 Fund Reim | 2.00 | 278.17 |
| 12/12/05 | Disbursements | 90 Medical Co-Pay | 346302 | Chk #74440 | 900608322, DOC: 523 Fund Reimb, Inv. Date: 11/30/2005 | -2.00 | 276.17 |
| 12/14/05 | Point of Sale | 60 Commissary | 348741 | 394181 | Commissary | -45.56 | 230.61 |
| 12/15/05 | Disbursements | 80 Postage | 349302 | Chk #74451 | 800609185, Inmate Benefit Fund, Inv. Date: 12/13/2005 | -.23 | 230.38 |
| 12/19/05 | Mail Room | 01 MO/Checks (Not Held) | 353281 | 5461265602 | Scott, Jessie L | 50.00 | 280.38 |
| 12/19/05 | Mail Room | 01 MO/Checks (Not Held) | 353281 | 5461265601 | Scott, Jessie L | 50.00 | 330.38 |
| 12/21/05 | Point of Sale | 60 Commissary | 355721 | 395686 | Commissary | -37.32 | 293.06 |

Date: 1/24/2006                          **Lincoln Correctional Center**                          Page 3
Time: 2:52pm                                    **Trust Fund**
d_list_inmate_trans_statement_composite         Inmate Transaction Statement

REPORT CRITERIA  -  Date: 06/01/2005 thru End;     Inmate: R36246;     Active Status Only ? : No;     Print
Restrictions ? : Yes;     Transaction Type: All Transaction Types;     Print Furloughs / Restitutions ? : Yes;     Include
Inmate Totals ? : Yes;     Print Balance Errors Only ? : No

**Inmate: R36246 Sulton, Karla**                          **Housing Unit: LIN-1B-06-05**

| Date | Source | Transaction Type | Batch | Reference # | Description | Amount | Balance |
|------|--------|------------------|-------|-------------|-------------|--------|---------|
| 12/28/05 | Disbursements | 80 Postage | 362302 | Chk #74522 | 80060101321, Inmate Benefit Fu, Inv. Date: 12/22/2005 | -1.20 | 291.86 |
| 12/28/05 | Disbursements | 80 Postage | 362302 | Chk #74522 | 800609716, Inmate Benefit Fund, Inv. Date: 12/19/2005 | -1.11 | 290.75 |
| 12/29/05 | Point of Sale | 60 Commissary | 363741 | 396757 | Commissary | -31.66 | 259.09 |
| 01/09/06 | Point of Sale | 60 Commissary | 009741 | 397962 | Commissary | -26.98 | 232.11 |
| 01/10/06 | Mail Room | 01 MO/Checks (Not Held) | 010281 | 08963908470 | Scott, Jessie L | 50.00 | 282.11 |
| 01/10/06 | Mail Room | 01 MO/Checks (Not Held) | 010281 | 08963908481 | Scott, Jessie L | 50.00 | 332.11 |
| 01/11/06 | Disbursements | 80 Postage | 011302 | Chk #74670 | 8006011143, Inmate Benefit Fun, Inv. Date: 01/09/2006 | -.04 | 332.07 |
| 01/11/06 | Disbursements | 80 Postage | 011302 | Chk #74670 | 8006011096, Inmate Benefit Fun, Inv. Date: 01/06/2006 | -.37 | 331.70 |
| 01/13/06 | Payroll | 20 Payroll Adjustment | 013114 | | P/R month of 12/2005 | 28.80 | 360.50 |
| 01/17/06 | Point of Sale | 60 Commissary | 017721 | 398876 | Commissary | -40.65 | 319.85 |
| 01/17/06 | Point of Sale | 60 Commissary | 017721 | 398883 | Commissary | -1.78 | 318.07 |
| 01/18/06 | Disbursements | 80 Postage | 018302 | Chk #74696 | 8006011116, Inmate Benefit Fun, Inv. Date: 01/11/2006 | -.83 | 317.24 |
| 01/24/06 | Point of Sale | 60 Commissary | 024721 | 400036 | Commissary | -29.63 | 287.61 |

|  |  |
|--|--|
| **Total Inmate Funds:** | 287.61 |
| **Less Funds Held For Orders:** | .00 |
| **Less Funds Restricted:** | .00 |
| **Funds Available:** | 287.61 |
| **Total Furloughs:** | .00 |
| **Total Voluntary Restitutions:** | .00 |

R 36246

## CERTIFICATE

**( TO BE COMPLETED FOR PRISONERS ONLY.   THIS IS A STATEMENT BY THE PRISON AND NOT THE PRISONER)**

I hereby certify that the plaintiff or petitioner in this action has the sum of $ 287.61 in his trust fund account at this correctional center where is confined.  I further certify that the plaintiff or petitioner has the following securities to his credit according to the records of this institution.

_____
Authorized Officer

_____
Institution

_____
Title

1/24/06
Date

**MPORTANT:**

**THIS CERTIFICATE MUST BE ACCOMPANIED BY A COPY OF A SIX MONTH LEDGER OF HE PLAINTIFF'S TRUST FUND ACCOUNT.**

THE CIRCUIT COURT FOR THE ____First____ JUDICIAL COURT
____Cook____ COUNTY, ILLINOIS

| | |
|---|---|
| Karla Sulton | ) |
| Petitioner | ) |
| v. | ) |
| People of the State of Illinois | ) |
| Respondent | ) |

No. __00CR14045__

FILED

FEB 1 6 2006

DOROTHY BROWN
CLERK OF CIRCUIT COURT

## MOTION FOR APPOINTMENT OF COUNSEL

The undersigned (Petitioner/Respondent), ____Karla Sulton____, respectfully moves the court to appoint counsel for (him/her) in this cause. In support, (Petitioner/Respondent) states:

1. I have been incarcerated continuously since ____May 20, 2000____, and am presently held in custody and residing at the ____Lincoln____ Correctional Center in ____Lincoln____ Illinois, County of ____Logan____.

2. I am without sufficient income or assets with which to pay for the costs of these proceedings or to employ an attorney to represent me in this matter.

3. I am without the services of counsel to represent me in this matter and I wish the Court to appoint counsel to represent me in this matter.

4. I have a constitutional right to access to the courts, and without the assistance of counsel, my access to the courts will not be adequate, effective or meaningful because:
   I need and have the right to effective assistance of counsel to address my issues to the court.

5. My (claim/defense) in this matter is not frivolous or malicious, but is colorable and meritorious.

6. Since this matter concerns the (condition/duration) of my confinement, I have sought (institutional/administrative) review of this matter through the proper grievance procedures before this action was filed. (At this point state what, if any, action was taken or decision that was made concerning your grievances).
   This is my first Post-Conviction Motion to the court concerning violations of my constitutional rights.

WHEREFORE, (Petitioner/Respondent) ____Karla Sulton____, respectfully requests that counsel be appointed to represent (him/her) in this matter.

*Karla Sulton*
(Your Signature)    ~Karla Sulton

Type or print name ____Karla Sulton____
Register number ____R36246____
____Lincoln____ Correctional Center
Box ____549____
____Lincoln____, Illinois ____62656____
(Petitioner/Respondent), Pro Se

STATE OF ILLINOIS

COUNTY OF ___Logan___

### AFFIDAVIT

I, ___Karla Sulton , R36246___, a prisoner incarcerated at the ___Lincoln___

Correctional Center, in ___Lincoln___, Illinois, have read and understand the

above Petition for Post-Conviction Relief. All of the facts presented in this Petition are

true and correct to the best of my recollection.


_Karla Sulton_
AFFIANT       -Karla Sulton


Subscribed and sworn to before me this ___8___ day of ___February___ 2006

_Tracy L Hill_
Notary Public -Tracy Hill

**"OFFICIAL SEAL"**
Tracy L. Hill
Notary Public, State of Illinois
My Commission Exp. 04/13/2009

Revised Jan 2002

*IN THE*
First Judicial Circuit
Cook County, Illinois

| | |
|---|---|
| Karla Sulton | ) |
| **Plaintiff,** | ) |
| | ) Case No. _____ 00CR14045 |
| **v.** | ) |
| | ) |
| People of the State of Illinois | ) |
| **Defendant** | |

## PROOF/CERTIFICATE OF SERVICE

TO:   Dorothy Brown             TO:    Richard Devine

Circuit Clerk                          States Attorney

2650 S. California Ave.           2650 S. California Ave.
Chicago, IL  60608               Chicago, IL  60608

LEASE TAKE NOTICE that on  _2-8-06_ , 20 _06_ , I have placed the documents listed below
the institutional mail at _Lincoln_ Correctional Center, properly addressed to the parties listed above
r mailing through the United States Postal Service:   one (1) original and two (2) copies to
     Dorothy Brown, Circuit Clerk and one (1) copy to Richard Devine, States Attorney.

rsuant to 28 USC 1746, 18 USC 1621 or 735 ILCS 5/109, I declare, under penalty of perjury, that I am a
med party in the above action, that I have read the above documents, and that the information contained
rein is true and correct to the best of my knowledge.

.TE: _2-8-06_

/s/ _Karla Sulton_
NAME:   Karla Sulton
IDOC#:  R36246

Lincoln          Correctional Center
P.O. BOX  549
     Lincoln          , IL  62656

**IN THE CIRCUIT COURT OF COOK COUNTY, ILLINOIS**
**COUNTY DEPARTMENT, CRIMINAL DIVISION**

PEOPLE OF THE STATE OF ILLINOIS,    )
                                    )
    Plaintiff-Respondent,           )    Post-Conviction
                                    )
        v.                          )    No. 00 CR 14045
                                    )
KARLA SULTON,                       )
                                    )    Hon. Stanley Sacks,
    Defendant-Petitioner.           )    Judge Presiding.

## ORDER

Petitioner, Karla Sulton, seeks post-conviction relief from the judgment of conviction entered against her on July 6, 2001. Additionally, petitioner has filed a Motion for Substitution of Judge citing to 725 ILCS 5/122-8.[1] Following a jury trial, petitioner was found guilty of aggravated kidnapping while armed with a dangerous weapon, a bludgeon, and sentenced to 12 years in prison. As grounds for post-conviction relief, petitioner claims she was denied effective assistance of counsel from appellate counsel and her due process rights were violated when she received legally inconsistent verdicts.

## BACKGROUND

The factual background underlying petitioner's aggravated kidnapping with a dangerous weapon (bludgeon) conviction was recited in the decision of the appellate court on direct appeal and will only be discussed where necessary to address the issues raised. On May 20, 2000, petitioner and her husband, Charles Sulton, set up a kidnapping scheme whereupon they lured the victim to their home for the supposed purpose of transacting business. Their motivation for

---

[1] Because this section of the Post-Conviction Hearing Act has been found to be unconstitutional as a violation of the separation of powers requirement of the Illinois Constitution in *People v. Joseph*, 113 Ill. 2d 36 (1986), it does not support petitioner and therefore the requested relief is denied.

EXHIBIT C

C    69

committing the crime presumably stemmed from their mutual suspicion that the victim had previously defrauded them of $500,00.

The victim arrived at the couple's home at around 1:00 a.m. on May 20, 2000. The husband soon struck up a conversation with the victim. In the middle of the conversation, the victim felt "[s]omething like a steel pipe fall on [her] head." The victim fell to the floor. As she looked up, she saw petitioner pointing a gun at her. The victim further testified that petitioner and her husband began striking her with their fists. Mr. Sulton bound the victim's wrists with a phone cord and petitioner stuffed the victim's mouth with cotton. Petitioner and her husband dragged the victim to the basement. Once she was in the basement, Mr. Sulton tied her to a pole. The couple continued taking turns beating the victim into the early morning. At roughly 9:20 a.m., the victim freed herself and escaped from petitioner's home.

## PROCEDURAL HISTORY

A direct appeal was taken to the Illinois Appellate Court, First Judicial District, wherein petitioner contended that she was not proven guilty beyond a reasonable doubt because the evidence did not establish that she was armed with a bludgeon while committing the offense. On August 13, 2003, the appellate court affirmed petitioner's conviction and sentence. *People v. Sulton*, No. 1-01-2906 (2003) (unpublished order under Supreme Court Rule 23). In its decision, that court specifically found there was a "testimonial conflict as to what object defendant used to strike the victim in the back of the head." *See Mandate of Appellate Court*, 5. The court continued and held:

> "In cases such as this one where the character of a weapon is indeterminate, the fact-finder is responsible for ascertaining whether or not that weapon is a 'bludgeon.' See, e.g., People v. Hutchins, 127 Ill. App. 2d 296, 303-04 (1970). We find that a rational fact finder, when viewing the evidence in the light most favorable to the prosecution, could conclude that under either alternative, defendant used a 'bludgeon' during the course of the kidnapping."

2

C

*Id.* at 5-6.

## ANALYSIS

The instant petition was filed on February 16, 2006, and is before the Court for an initial determination of its legal sufficiency pursuant to Section 2.1 of the Post-Conviction Hearing Act. 725 ILCS 5/122-2.1 (West 2002); *People v. Holliday*, 313 Ill. App. 3d 1046, 1048 (5th Dist. 2000). A post-conviction petition is a collateral attack on a prior judgment, *People v. Simms*, 192 Ill. 2d 348, 359, (2000), and is limited to constitutional issues which were not and could not have been raised on direct appeal. *People v. King*, 192 Ill. 2d 189, 192 (2000). Where the petitioner raises non-meritorious claims, the court may summarily dismiss them. *People v. Richardson*, 189 Ill. 2d 401, 407 (2000).

Under the Act, a petitioner enjoys no entitlement to an evidentiary hearing. *People v. Cloutier*, 191 Ill. 2d 392, 397 (2000). In order to obtain a hearing, the petitioner has the burden of establishing that a substantial violation of his constitutional rights occurred at trial or sentencing. *People v. Johnson*, 191 Ill. 2d 257, 268 (2000). A *pro se* post-conviction petition may be summarily dismissed as frivolous or patently without merit during the first stage of post-conviction review unless the allegations in the petition, taken as true and liberally construed, present the "gist" of a valid constitutional claim. *People v. Edwards*, 197 Ill. 2d 239, 244 (2001).

### A.    Ineffective Assistance of Appellate Counsel

Petitioner claims appellate counsel was ineffective for failing to meet with her to consider her claims, including a claim that her conviction is void because of inconsistent verdicts.

It is axiomatic that a criminal petitioner is guaranteed the effective assistance of counsel on appeal. *Evitts v. Lucey*, 469 U.S. 387, 396-97 (1985). However, effective assistance in a constitutional sense means competent, not perfect, representation. *People v. Easley*, 192 Ill. 2d

307, 344 (2000). In assessing claims of ineffective assistance of appellate counsel, the court follows the two-pronged test of *Strickland v. Washington*, 466 U.S. 668, 687, 80 L. Ed. 2d 674, 693, 104 S. Ct. 2052, 2064 (1984). Under this standard, the petitioner must show that counsel's representation fell below an objective standard of reasonableness, and that, but for this deficiency, there is a reasonable probability that counsel's performance was prejudicial to the defense. *People v. Hickey*, 204 Ill. 2d 585, 613 (2001).

To succeed on a claim of ineffective assistance of appellate counsel, petitioner must show that the failure to raise a particular issue was objectively unreasonable and that his appeal was prejudiced by the omission. *People v. Williams*, 209 Ill. 2d 227, 243 (2004). "Appellate counsel is not obligated to brief every conceivable issue on appeal, and it is not incompetence of counsel to refrain from raising issues which, in his or her judgment, are without merit, unless counsel's appraisal of the merits is patently wrong." *People v. Easley*, 192 Ill. 2d 307, 329 (2000). Thus, petitioner has not suffered prejudice from appellate counsel's decision not to raise certain issues on appeal unless such issues were meritorious. *Id.* at 329.

Here, the court declines to deem "patently erroneous" appellate counsel's assessment of the record and decision not to raise the issue asserted by petitioner. Moreover, petitioner has failed to establish that had appellate counsel raised any or all of the above listed issues, her conviction or sentence would have been reversed. "A petitioner's failure to make the requisite showing of *either* deficient performance or sufficient prejudice defeats an ineffectiveness claim." *People v. Palmer*, 162 Ill. 2d 465, 475-76 (1994) (emphasis added) (citations omitted).

The substantive claim, that her conviction is void because it was the result of inconsistent verdicts, is completely meritless. Petitioner provides no law to support this view. As stated above, there was ambiguity as to whether petitioner struck the victim with a firearm or a

4

bludgeon prior to binding and gagging the victim. It found that a rational fact-finder could conclude under either alternative, defendant used a "bludgeon." Petitioner was, therefore, rightly convicted of aggravated kidnapping while armed with a dangerous weapon.

Petitioner's claim that appellate counsel prejudiced her by not arguing that the jury's decision to convict under 720 ILCS 5/10-2(A)(5) rather than 720 ILCS 5/10-2(A)(6) is not one of constitutional dimension. Petitioner does not deny striking the victim with a weapon. Thus, her claim is patently frivolous and without merit because she cannot show prejudice.

## B.    Allegations of Due Process Violations

Petitioner next claims her rights to due process were violated in the following ways: (1) trial counsel failed to notify her of a plea offer made by the State where, in return for petitioner's guilty plea, the State would make a recommendation of 6 years for aggravated kidnapping and 15 years for the firearm enhancement effective at the time; (2) the trial judge erred when it refused allow letters written to defendant to be entered into evidence; (3) petitioner's conviction is void because the jury arrived at inconsistent verdicts; and (4) the Court erred in refusing to provide petitioner with free transcripts to prepare her post-conviction petition.

### 1.    Failure to Notify of a Possible Plea Deal

Petitioner does not show the proceedings were rendered fundamentally unfair because trial counsel allegedly failed to notify her of a plea agreement. This "alleged" plea agreement petitioner describes actually would lead to a stiffer sentence (eighteen years) than the one petitioner received.

### 2.    Evidentiary Issue

Petitioner's next claim fails because the trial court's decision to deny letters written by codefendant to be offered into evidence was correct. The letters themselves are pure hearsay and

C       73



not properly admissible into evidence. Additionally, petitioner has failed to attach the letters in question.

### 3. Inconsistent Verdicts

The argument that her jury came to inconsistent verdicts is refuted as explained in full above.

### 4. Right to Transcripts

Petitioner finally claims her rights to due process were violated when the trial court denied her request for free transcripts in order to prepare this initial *pro se* post-conviction petition. The Appellate Court for the First District has ruled that a petitioner enjoys no such right to free transcripts to prepare an initial post-conviction petition in the case, *People v. Salgado*, 353 Ill. App. 3d 101 (1st Dist. 2004). The *Salgado* Court distinguished the right to transcripts that a defendant has on direct appeal with the post-conviction petitioner such as the one before us. It explained:

> "In sum, transcripts must be provided to an indigent defendant on direct appeal (see 188 Ill. 2d R. 605(a); *Harris*, 212 Ill. App. 3d at 15, citing *Griffin*, 351 U.S. 12 100 L. Ed. 891, 76 S. Ct. 585), but it is within the circuit court's discretion whether to provide a petitioner transcripts during the initial stage of postconviction proceedings. See 134 Ill. 2d R. 471; 725 ILCS 5/122-4 (West 2000); *Bonilla*, 170 Ill. App. 3d at 34. This distinction is justified because 'a direct appellant must initially submit a brief including facts, legal argument, and citation to legal authority,' whereas 'a post-conviction petitioner must submit only a petition setting forth such facts as indicate a denial of his constitutional rights, showing only that his petition is not frivolous or patently without merit.' *Bonilla*, 170 Ill. App. 3d at 34, citing *People v. Porter*, 141 Ill. App. 3d 208, 215 (1988) (holding that, for purposes of an equal protection challenge, a distinction can be made between indigent defendants who file direct appeals and those who file postconviction petitions)."

*Salgado*, 353 Ill. App. 3d at 105. This Court exercised its discretion when it denied petitioner free transcripts of her trial proceedings in order to prepare her initial post-conviction petition.

### CONCLUSION

6

Based upon the foregoing discussion, the Court finds that the matters raised by petitioner are frivolous and patently without merit. Accordingly, the petition for post-conviction relief shall be and is hereby dismissed. Petitioner's motion for appointment of counsel and to proceed in *forma pauperis* is likewise denied.

ENTERED: _____

Hon. Stanley Sacks
Circuit Court of Cook County
Criminal Division

DATE: **FEB. 17, 2006**

7

C      75

NOTICE

The text of this order may be changed or corrected prior to the time for filing of a Petition for Rehearing or the disposition of the same. Harrigan

FIFTH DIVISION
SEPTEMBER 14, 2007

No. 1-06-2886

IN THE
APPELLATE COURT OF ILLINOIS
FIRST JUDICIAL DISTRICT

| | | |
|---|---|---|
| THE PEOPLE OF THE STATE OF ILLINOIS, | ) | Appeal from the Circuit Court of Cook County. |
| Plaintiff-Appellee, | ) | |
| v. | ) | No. 00 CR 14045 |
| KARLA SULTON, | ) | Honorable Stanley Sacks, Judge Presiding. |
| Defendant-Appellant. | ) | |

O R D E R

Following a jury trial, defendant Karla Sulton was convicted of aggravated kidnaping while armed with a dangerous weapon, a bludgeon, and sentenced to 12 years' imprisonment. On direct appeal, we affirmed the judgment. People v. Sulton, No. 1-01-2906 (2003) (unpublished order under Supreme Court Rule 23). On February 16, 2006, defendant filed a pro se post-conviction petition, which the trial court summarily dismissed. Defendant has appealed.

The State Appellate Defender, who represents defendant on appeal, has filed a motion for leave to withdraw as appellate counsel. A memorandum in support of the motion has been submitted pursuant to Pennsylvania v. Finley, 481 U.S. 551, 95 L. Ed. 2d 539, 107 S. Ct. 1990 (1987), in which counsel stated that

1-06-2886

an appeal of this case would be frivolous.  Defendant has filed
two responses.

　　We have carefully reviewed the record in this case, the
aforesaid memorandum and defendant's responses in compliance with
the mandate of the <u>Finley</u> decision.  We agree with counsel's
assessment.  Therefore, the motion of the State Appellate
Defender for leave to withdraw as counsel is allowed.

　　The judgment of the circuit court of Cook County is
affirmed.

　　Affirmed.

　　TULLY, J., with FITZGERALD SMITH, P.J., and GALLAGHER, J., concurring.

No.

IN THE

SUPREME COURT OF THE

STATE OF ILLINOIS

| | | |
|---|---|---|
| PEOPLE OF THE STATE OF ILLINOIS, | ) | Petition for Leave to Appeal from the Appellate Court of Illinois, First Judicial District. |
|   Plaintiff-Appellee, | ) | |
| —vs— | ) | |
| | ) | Case No.      00CR1405 |
| | ) | Appellate No. 1-06-2886 |
| KARLA SULTON, | ) | |
|   Defendant-Appellant, Petitioner. | ) | |
| | ) | |

## PETITION FOR LEAVE TO APPEAL

TO THE HONORABLE JUSTICES OF THE SUPREME COURT OF THE STATE OF ILLINOIS:

Karla Sulton, Pro Se
#R36246
P.O. Box 549
Lincoln, IL  62656

EXHIBIT E

May It Please The Court:

## I.

### PRAYER FOR LEAVE TO APPEAL

Your Petitioner, Karla Sulton, pro se, respectfully petitions this Honorable Court for leave to appeal pursuant to Supreme Court Rule 315, from the judgment of the Appellate Court of Illinois, First Judicial District, which affirmed the judgment of conviction entered by the Circuit Court of Cook County, Illinois upon the verdict finding Petitioner guilty of Aggravated Kidnapping with a bludgeon.

## II.

### OPINION AND PROCEEDINGS BELOW

On April 4, 2001, Petitioner was found guilty of Aggravated Kidnapping with a bludgeon. Petitioner was subsequently sentenced to 12 years. She appealed this conviction to the Illinois Appellate Court, First District. On July 2, 2003, the court delivered its opinion in said appeal, affirming the judgment of conviction and sentence. No Petition for Rehearing was filed. On February 16, 2006, Petitioner filed a Pro Se Post-Conviction Petition, which the trial court summarily dismissed. On February 27, 2006, Petitioner filed a Notice of Appeal and The State Appellate Defender was appointed. On May 31, 2007, Assistant Appellate Defender, Maria Harrigan, filed a Motion to Withdraw as Counsel on Appeal pursuant to Pennsylvania v. Finley. On September 14, 2007, the Appellate Court allowed the Motion to Withdraw as counsel and affirmed the judgment of the Circuit Court of Cook County.

III.

## POINTS RELIED UPON FOR REVERSAL

1. The Illinois Supreme Court in its supervisory role should review legally inconsistent verdicts in regard to an affirmative defense, necessity. Pursuant to section 7-13 of the Criminal Code of 1961, as amended (720 ILCS 5/7-13), necessity excuses conduct that would otherwise be an offense if the accused was without blame in occasioning or developing the situation and reasonably believed such conduct was necessary to avoid a public or private injury greater than the injury which might reasonably result from her own conduct. The defense of necessity involves a choice that can be made only between two or more admitted evils, other options being unavailable. If actions of defendant were necessary for one part of the crime they were necessary for another part of the crime unless greater harm was inflicted.

2. There was a conflict of interest in regard to the appellate counsel on defendant's appeal of her Post-Conviction Petition, whereby appellate counsel was assigned to represent defendant and co-defendant at the same time in each of their Post-Conviction denials.

A "conflict of interest per se" for the purposes of an ineffective assistance of counsel claim, arises where defense counsel has a tie to a person who would benefit from an unfavorable verdict for the defendant. Where competing interest of two clients are directly at odds, the court presumes ineffectiveness of counsel without inquiry into how a lawyer actually performed. U.S.C.A. Const. Amend. 6

(2)

IV.

## STATEMENT OF FACTS

Karla Sulton and her husband Charles were charged with two counts of aggravated kidnapping and two counts of armed robbery based on their alleged restraint of Lolita Crowell in their home for several hours on May 20, 2000. One count of aggravated kidnapping alleged that the Sultons knowingly and secretly confined Crowell against her will while armed with a dangerous weapon other than a firearm, to wit: a bludgeon. The armed robbery charges were nolle prossed prior to K. Sulton's jury trial.

Lolita Crowell testified that she first met Charles and Karla Sulton on March 20, 2000, when she went to their house to buy heroin. The Sultons told Crowell that their electricity was going to be disconnected for lack of payment. Crowell told them that she had a friend, Sandra who worked at ComEd who could clear up their bill. The following month, Crowell made arrangements with Charles Sulton to clear up his light bill in exchange for $500.

On May 19, 2000, at 11:00PM, Crowell fought with her husband. Crowell remained mad at her husband and called Charles to see if he wanted to buy her husband's shoes. Sulton said he would look at them, so Crowell went to Sulton's house.

When Crowell called Charles and they made their agreement, Karla was not at home. Karla was gone with her father, Joseph Scott, to return a rental car at Midway Airport. When Karla returned home, Charles told her that Crowell was on her way over to the house. Charles said he was going to mess up Crowell for playing with his money. Minutes later Crowell rang the doorbell.

When Crowell arrived, Karla Sulton opened the door. After Karla paid the cab, Crowell and the Sultons sat in the kitchen. Crowell felt a blow to the back of her head and she fell to the floor. Crowell looked up and saw Karla holding a gun. The Sultons hit Crowell and while Charles tied her up with duct tape, they threatened to kill her. Charles repeatedly asked her why their electric bill hadn't been paid and wanted to know where Sandra was. Charles put Crowell in the basement, removed her pants and tied her to a pole. Karla gave Crowell a bedsheet. Crowell was able to escape the next morning. She immediately called police.

Officers Cedric Brumley and David Pearson responded to the call and found Crowell wearing a Packers jacket and a bedsheet, with duct tape around her neck, and an electrical cord around her wrist. She was bruised. She told them what had happened and took the officers to the Sulton house. The officers entered the home, arrested the Sultons and searched the premises where they recovered physical evidence. Both Brumley and Pearson observed an electrical cord tied around a chair and a pole as well as duct tape in the basement.

(3)

## STATEMENT OF FACTS CONTINUED

Karla Sulton testified that when Crowell came over that night Charles had been smoking crack and was very upset about the electric bill because he had received notice that the check written for payment had bounced. Karla was frightened of Charles because he had a reputation for violence and was becoming angrier the more crack he smoked. Karla admitted to striking Crowell on the head with a piece of wood molding because she believed that had she not done that, Charles would have shot Crowell.

Karla was convicted of aggravated kidnapping with a bludgeon and acquitted of aggravated kidnapping with a firearm. She was originally sentenced to twenty years, but upon a motion to reconsider, her sentence was reduced to twelve years.

On direct appeal, Karla argued that since the jurors acquitted her of the firearm count, they could not have believed that the state proved she had a firearm and because a piece of wooden molding can not be considered a bludgeon, her conviction should be reversed. The appellate court affirmed her conviction and sentence in June of 2003. People v. Sulton, 1-01-2906, Rule 23 Order (1st Dist. 2003).

On February 16, 2006, Karla Sulton filed a pro se post-conviction petition alleging that appellate counsel was ineffective, that verdicts in the case were inconsistent, that trial counsel never informed her of the State's plea bargain offer, and that the trial judge would not allow Charles Sulton's letters written to her in jail, which would have supported her necessity defense. The trial court dismissed Sulton's petition as frivolous on February 27, 2006.

(4)

V.

ARGUMENT

This court should grant leave to appeal in this case because of the importance of the question, "Can there be legally inconsistent verdicts when an affirmative defense is used?"  The intent of the legislature is clear by the heading and the wording of the statute.

720 ILCS ~  Article 7. Justifiable Use of Force; Exoneration

720 ILCS 5/7-13--Necessity
Conduct which would otherwise be an offense is justifiable by reason of necessity if the accused was without blame in occasioning or developing the situation and reasonably believed such conduct was necessary to avoid a public or private injury greater than the injury which might reasonably result from his own conduct.

All of those elements were proved when defendant was acquitted of aggravated kidnapping with a firearm.  At trial, defendant admitted to having the firearm and pointing it at the victim.  The defendant also admitted to having and hitting the victim with the piece of wood molding.  During deliberations the jury asked the court a question.  The question was, "Would the defendant be guilty of aggravated kidnapping with a firearm if there were compelling reasons that defendant had the firearm?"  When the jury found the defendant not guilty of aggravated kidnapping with a firearm, that de facto acquitted the defendant of aggravated kidnapping with a bludgeon.

The defense of necessity is viewed as involving the choice between two or more admitted evils where optional courses of action are unavailable, and the conduct chosen must promote some higher value than the value of literal compliance with the law.  People v. Janik (1989), 127 Ill.2d 390, 399, 130 Ill.Dec. 427, 537 N.E.2d 756.

Some courts have read the second prong of the defense to justify only such otherwise illegal conduct which constitutes the sole reasonable alternative.  People v. Dworzanski (1991), 220 Ill.App.3d 185, 192, 162 Ill.Dec. 844, 580 N.E.2d 1263; People v. Perez (1981), 97 Ill.App.3d 278, 281, 52 Ill.Dec. 736, 422 N.E.2d 945.

Simply stated, the defense of necessity involves a choice that can be made only between two or more admitted evils.  However, when another alternative exists besides the evil choices which, if carried out, would cause less harm, the accused is not justified in breaking the law.  People v. Haynes (1991), 223 Ill.App.3d 126, 128, 165 Ill.Dec. 606, 584 N.E.2d 1040.

The defendant has met the burden in all three prongs regarding BOTH charges, aggravated kidnapping with a firearm AND aggravated kidnapping with a bludgeon.

ARGUMENT CONTINUED

Defendant's co-defendant, who was her then husband, planned on killing the victim, Ms. Crowell. He stated this fact to defendant several times after Ms. Crowell arrived voluntarily at the Sulton's house. This belief was not unreasonable to defendant because Charles Sulton was on parole for murder and aggravated kidnapping. All defendant's actions on the night of May 19, 2000, were to prevent greater harm and/or injury to Ms. Crowell and to defendant herself. Defendant meets the burden of promoting some higher value than the value of literal compliance with the law on BOTH charges. The court should review this case in its supervisory role. The issue here is legally inconsistent verdicts when an affirmative defense is used ar trial.

In People v. Jones, 207 Ill.2d 122, 797 N.E.2d 640, the court said, "Defendants in Illinois can no longer challenge convictions on the sole basis that they are legally inconsistent with acquittals on other charges.

The court needs to rule can one's actions be justified and not be justified at the same time. The statute is clear, 720 ILCS 5/7-13,
...if the accused reasonably believed such conduct was necessary to avoid a public or private injury GREATER than the injury which might reasonably result from his own conduct.

Greater harm could result from the firearm, rather than the bludgeon. There was never an issue of did I have a firearm. I admitted to having a firearm and the jury had the firearm in the room with them during deliberations. The State views being armed with a firearm 720 ILCS 5/10-2(a)(6) more severely than being armed with a bludgeon. Aggravated kidnapping witha firearm is a violation of subsection (a)(6) is a Class X felony for which 15 years shall be added to the term of imprisonment imposed by the court. Clearly being armed with a firearm can cause greater harm, than being armed with a bludgeon.

United States v. Powell, 469 U.S. 57, 83 L.Ed.2d 461, 105 S.Ct. 471, which reiterated that consistency in the verdicts is not required as a matter of constitutional law and that inconsistent verdicts can often be explained as a product of juror lenity.

In this case, it is not leniency that is the issue. It is the legislative intent with the statute, justifiable use of force: Exoneration, on all charges up to death.

The line of thinking suggests the greater force (aggravated kidnapping w/ firearm) was justified and the lesser force (aggravated kidnapping w/bludgeon) wasn't justified. The verdicts in this case are the complete opposite of what the legislature intended, with the statute of necessity.

(6)

ARGUMENT CONTINUED

This court should grant review because there was a conflict of interest
in regard to appellate counsel on defendant's appeal of her post-conviction
petition.

A "conflict of interest per se" for the purposes of an ineffective assistance
of counsel claim, arises where defense counsel has a tie to a person who
would benefit from an unfavorable verdict for the defendant. U.S.C.A.
Const.Amend. 6 (Exhibits 1 and 2).

Assistant Appellate Defender, Maria A. Harrigan. who was appointed counsel
by the Appellate Court, was also counsel for defendant's co-defendant, Charles
Sulton. Ms. Harrigan was working on both appeals at the same time. The accusatory
nature of defendant's defense would be a direct conflict of interest to represent
both Charles Sulton and defendant. To present a vigorous defense on defendant's
behalf, Ms, Harrigan would have to implicate her other client, Charles Sulton,
which would be a violation of the duty counsel owes to a client and to not
implicate Charles would violate the duty owed to defendant.

The Supreme Court has provided guidance for detecting a conflict per se. A
conflict per se arises where defense counsel has a tie to a person who would
benefit from an unfavorable verdict for the defendant. In such case, the
defendant is not required to show prejudice as a result of the representation;
the representation is deemed ineffective as a result of inherent conflict.
People v. Sprietzer, 123 Ill.2d, 121 Ill.Dec. 224, 525 N.E.2d 30.

The potential for conflict can easily ripen into actual conflict. If the
evidence in support of the other defendant's guilt is of sufficient weight to
admit into evidence and the co-defendant's would tend to negate the defendant's
guilt, the conflict is real.

It is equally important to assess what would happen if defendant is acquitted.
Counsel's awareness that harm would inevitably befall another client as a
result of an acquittal is essential to the presumption of ineffectiveness.
People v. Sims, 255 Ill.Dec. 739, 750 N.E.2d 320.

Where competing interest of two clients are directly at odds, the court
presumes ineffectiveness of counsel without inquiry into how a lawyer
actually performed. U.S.C.A. Const.Amend 6.

(7)

VI.

CONCLUSION

    For the foregoing reasons, the defendant requests that this court grant leave to appeal from the First District's judgment. Defendant requests this court to reverse and vacate the conviction for aggravated kidnapping with a bludgeon.

Respectfully submitted,

Karla Sulton #R36246
Lincoln Correctional Center
P.O. Box 549
Lincoln, IL   62656

SUBSCRIBED AND SWORN TO BEFORE ME ON THIS ___9___ DAY OF _Oatoher_ , 2007.

NOTARY PUBLIC

"OFFICIAL SEAL"
Tracy L. Hill
Notary Public, State of Illinois
My Commission Exp. 04/13/2009

**(8)**

**APPENDIX**

1. Letter to Clerk of the Appellate Court - - June 13, 2007

2. Letter to Clerk of the Appellate Court - - July 12, 2007

3. Motion to Withdraw as Counsel on Appeal

4. Order of the Appellate Court

**(i)**

**EXHIBIT 1**

June 13, 2007

Mr. Steven M. Ravid
Clerk of the Appellate Court
First District
160 North LaSalle, Suite 1400　　　　　Appeal No. 1-06-2886
Chicago, IL  60601　　　　　　　　　　Case No.  00 CR 14045

Dear Mr. Ravid:

I am writing in regard to the Finley Motion my counsel filed on May 31, 2007.
I object to the State Appellate Defender withdrawing from my case.

In the motion, the issue of inconsistent verdicts (p5), my counsel says I have
no meritorious claim. I disagree. I was convicted of Aggravated Kidnapping with
a bludgeon and acquitted of Aggravated Kidnapping with a firearm. I admitted to
having the firearm and the bludgeon. I had an affirmative defense of necessity.

Necessity is under Article 7, Justifiable Use of Force. The split verdict shows
conflicting states of mind. Either the force was justified or it wasn't. In
People v. Walls, 307 Ill. Dec. 382, 859 N.E. 2d 1059 (Ill. App. 4 Dist. 2006),
the court looked at conflicting states of mind and affirmed the conviction. My
case differs in that I stipulated to all of the facts. In Walls, this case shows
no affirmative defense.

The point is, my mental state caused the use of force and therefore made my actions
justifiable. The jury said yes and no. Could you kill someone in self defense
and be acquitted of murder and convicted of aggravated battery? I feel the
Appellate Courts needs to look at and settle inconsistent verdicts dealing with
conflicting mental states on affirmative defenses.

It has also come to my attention that Maria Harrigan, Assistant Appellate Defender,
is also representing Charles Sulton, my co-defendant, in his appeal. The
accusatory nature of my defense would be a direct conflict of interest to represent
both Charles and myself. To defend me, Ms. Harrigan would have to implicate Charles
Sulton, which would be a violation of the duty counsel owes to a client and to not
implicate Charles would violate the duty owed to me.

I am asking this court to allow Ms. Harrigan to withdraw as counsel, but not on
Finley, nonmeritorious issues, but for conflict of interest. I am also asking the
court to appoint another attorney and to look at the issues I have raised.

Respectfully submitted,

Karla Sulton

Ms. Karla Sulton
LCC-R36246
P.O. Box 549
Lincoln, IL  62656

**EXHIBIT 2**

July 12, 2007


Mr. Steven M. Ravid
Clerk of the Appellate Court
First District                                          **REF: Case No. 1-06-2886**
160 North LaSalle, Suite 1400
Chicago, IL  60601

Dear Mr. Ravid:

As a follow up to my letter of June 13, 2007, I am asking this court to again
reconsider assigning me another attorney. I absolutely feel that my issues
are meritorious.

The issue of Legally Inconsistent Verdicts has not been fully addressed. In People
v. Jones, 207 Ill. 2d 122; 797 N.E. 2d 640, the Supreme Court of Illinois said that
defendants in Illinois can no longer challenge convictions on the sole basis that
they are legally inconsistent with acquittals on other charges.

In People v. McCoy, 207 Ill. 2d 352; 799 N.E. 2d 269, the court came to the same
conclusion. My case differs in the aspect, that I had an affirmative defense,
necessity, which falls under justifiable use of force.

In all the cases I have researched in regards to legally inconsistent verdicts, I
have not found one that the defendant used an affirmative defense. Either my actions
in total were justified by <u>necessity</u> or they were not.

How did the jury find justifiable force necessary in reference to the firearm and
not find justifiable force necessary to the piece of molding? The possession of
the firearm enhanced the crime with more severe sentencing guidelines, 6-30 years
plus 15 years for the firearm. In most cases the lesser use of force is justifiable
and the greater use of force is not justifiable. In my case, it is the reverse.
The jury justified the greater use of force and convicted me on the less serious
use of force.

The major question is, if any case of force was justified, then all use of force
should be justified, excluding death or serious injury. My mental state of mind
did not vacillate during the course of the crime. I feel the court needs to
address the legally inconsistent verdicts involving an affirmative defense.

Sincerely,

*Karla Sulton*

Ms. Karla Sulton
LCC-R36246
P.O. Box 549
Lincoln, IL  62656

**EXHIBIT 3**

No. 1-06-2886

IN THE

APPELLATE COURT OF ILLINOIS

FIRST DISTRICT

| | | |
|---|---|---|
| PEOPLE OF THE STATE OF ILLINOIS, | ) | Appeal from the Circuit Court |
| | ) | of Cook County, Illinois. |
| Respondent-Appellee, | ) | |
| | ) | |
| -vs- | ) | No. 00 CR 14045. |
| | ) | |
| KARLA SULTON, | ) | Honorable |
| | ) | Stanley J. Sacks, |
| Petitioner-Appellant. | ) | Judge Presiding. |

## PROOF OF SERVICE

TO:  Richard A. Devine
     Cook County State's Attorney
     300 Daley Center
     Chicago, Illinois  60602

     Ms. Karla Sulton
     Register No. R-36246
     Lincoln Correctional Center
     P.O. Box 549
     Lincoln, IL  62656

You are hereby notified that on May 31, 2007, we personally delivered the original and three copies of the attached Motion to Withdraw as Counsel on Appeal Pursuant to *Pennsylvania v. Finley*, 481 U.S. 551 (1987) in the above-entitled cause to the Clerk of the above Court, a copy of which is hereby served on you.

MARIA A. HARRIGAN
Assistant Appellate Defender

STATE OF ILLINOIS  )
                   ) SS
COUNTY OF COOK    )

The undersigned, being first duly sworn on oath, deposes and says that he personally delivered the required number of copies of the attached Motion to the Clerk of the above Court and to the State's Attorney of Cook County on May 31, 2007.

CLERK

SUBSCRIBED AND SWORN TO BEFORE ME
on May 31, 2007.

NOTARY PUBLIC

Official Seal
Kelly Grillo
Notary Public State of Illinois
My Commission Expires 03/16/2010

No. 1-06-2886

IN THE

APPELLATE COURT OF ILLINOIS

FIRST DISTRICT

| | | |
|---|---|---|
| PEOPLE OF THE STATE OF ILLINOIS, | ) | Appeal from the Circuit Court |
| | ) | of Cook County, Illinois. |
| Respondent-Appellee, | ) | |
| | ) | |
| -vs- | ) | No. 00 CR 14045. |
| | ) | |
| KARLA SULTON, | ) | Honorable |
| | ) | Stanley J. Sacks, |
| Petitioner-Appellant. | ) | Judge Presiding. |

MOTION TO WITHDRAW AS COUNSEL ON APPEAL
PURSUANT TO *PENNSYLVANIA V. FINLEY*

The Office of the State Appellate Defender, by Michael J. Pelletier, Deputy Defender, and Maria A. Harrigan, Assistant Appellate Defender, moves for leave to withdraw as counsel for Appellant, Karla Sulton, in this cause.

In support of this motion Maria A. Harrigan, Assistant Appellate Defender, states:

1.      Petitioner-Appellant, Karla Sulton was sentenced to 12 years in prison for aggravated kidnaping on May 24, 2001. Appellant is currently incarcerated. Her conviction and sentence were affirmed on direct appeal in appellate court number (1-2906.)

2.      On February 16, 2006, Petitioner-Appellant filed a petition for post-conviction relief. The petition was denied by the Circuit Court on February 27, 2006.

3.      Late notice of appeal was allowed on October 30, 2006. The Office of the State Appellate Defender was appointed on October 30, 2006.

4.      After an examination of the record on appeal, and after discussing the case with

another attorney in the office who also read the record on appeal, counsel has concluded that an

appeal in this cause would be frivolous.  Counsel has informed petitioner of this conclusion and

that counsel intends to file the motion to withdraw.  Therefore, counsel hereby moves to

withdraw as counsel on appeal pursuant to *Pennsylvania v. Finley*, 481 U.S. 551 (1987).  A

memorandum supporting this motion is attached.

      WHEREFORE, the Office of the State Appellate Defender respectfully moves to

withdraw as counsel on appeal in this cause.

      Respectfully submitted,

      MICHAEL J. PELLETIER
      Deputy Defender

      MARIA A. HARRIGAN
      Assistant Appellate Defender
      Office of the State Appellate Defender
      203 North LaSalle Street - 24th Floor
      Chicago, Illinois  60601
      (312) 814-5472

      COUNSEL FOR PETITIONER-APPELLANT

STATE OF ILLINOIS    )
                        )   SS
COUNTY OF COOK    )

# AFFIDAVIT

Maria A. Harrigan, being first duly sworn on oath, deposes and says that she has read the foregoing Motion by her subscribed and the facts stated therein are true and correct to the best of her knowledge and belief.

MARIA A. HARRIGAN
Assistant Appellate Defender

SUBSCRIBED AND SWORN TO BEFORE ME
on May 31, 2007

NOTARY PUBLIC

Official Seal
Kelly Grillo
Notary Public State of Illinois
My Commission Expires 03/16/2010

No. 1-06-2886

IN THE

APPELLATE COURT OF ILLINOIS

FIRST DISTRICT

| | | |
|---|---|---|
| PEOPLE OF THE STATE OF ILLINOIS, | ) | Appeal from the Circuit Court |
| | ) | of Cook County, Illinois. |
| Respondent-Appellee, | ) | |
| | ) | |
| -vs- | ) | No. 00 CR 14045. |
| | ) | |
| KARLA SULTON, | ) | Honorable |
| | ) | Stanley J. Sacks, |
| Petitioner-Appellant. | ) | Judge Presiding. |

## MEMORANDUM IN SUPPORT OF MOTION FOR LEAVE TO WITHDRAW AS COUNSEL ON APPEAL

### STATEMENT OF FACTS

Karla Sulton and her husband Charles were charged with two counts of aggravated kidnaping and two counts of armed robbery based on their alleged restraint of Lolita Crowell in their home for several hours on May 20, 2000. (T.C. 14-17)[1] One count of aggravated kidnaping alleged that the Sultons knowingly and secretly confined Lolita Crowell against her will while armed with a firearm and the other charged that they knowingly and secretly confined Crowell against her will while armed with a dangerous weapon other that a firearm, to wit: a bludgeon.

---

[1]The trial record will be cited as TR for the report of proceedings and TC for the common-law record and the post-conviction record will be cited as R for the report of proceedings and C for the common-law record.

1

The armed robbery charges were *nolle prossed* prior to K. Sulton's jury trial.[2]

       Lolita Crowell testified that she first met Charles and Karla Sulton on March 20, 2000 when she went to their house to buy herion. (T.R. Vol. V 42) The Sultons told Crowell that their electricity was going to be disconnected for lack of payment. (T.R. 43) Crowell told them that she had a friend, Sandra, who worked at ComEd who could clear up their bill. (T.R. Vol. V 43) The following month, Crowell made arrangements with Charles Sulton to clear up his light bill in exchange for $500. (T.R. Vol. V 44-45)

       On May 19, 2000, at 11:00 p.m., Crowell fought with her husband. (T.R. Vol. V 49) Crowell remained mad at her husband and called Charles Sulton to see if he wanted to buy her husband's shoes. (T.R. Vol. V 49) Sulton said he would look at them, so Crowell went to Sulton's house. (T.R. Vol. V 50)

       When Crowell arrived, Karla Sulton opened the door. (T.R. Vol. V 51) After Karla paid the cab, Crowell and the Sultans sat in the kitchen. (T.R. Vol V 53) Crowell felt a blow to the back of her head and she fell to the floor. (T.R. Vol. V 54) Crowell looked up and saw Karla holding a gun. (T.R. Vol. V 55) The Sultons hit Crowell, and while Charles tied her up with duct tape, they threatened to kill her. (T.R. Vol V 56-68) Charles repeatedly asked her why their electric bill hadn't been paid and wanted to know where Sandra was. (T.R. Vol. V 59) Charles put Crowell in the basement, removed her pants and tied her to a pole. (T.R. Vol V 60-64) Karla gave Crowell and bedsheet. (T.R. Vol. V 65-66) Crowell was able to escape the next morning. (T.R. Vol. V 67-70) She immediately called police. (T.R. Vol V 71)

       Officers Cedric Brumley and David Pearson responded to the call and found Crowell, wearing a Packers jacket and a bedsheet, with duct tape around her neck, and an electrical cord

---

[2]Charles Sulton is not a party to this appeal.

around her wrist. She was bruised. (T.R. Vol. V 125-128)  She told them what had happened and took the officers to the Sulton house. (T.R. Vol. V 128-129)  The officers entered the home, arrested the Sultons and searched the premises where they recovered physical evidence. (T.R. Vol V 130-140)  Both Brumley and Pearson observed an electrical cord tied around a chair and a pole as well as duct tape in the basement. (T.R. Vol. V 141)

Karla Sulton testified that when Crowell came over that night, Charles had been smoking crack and was very upset about the electric bill because he had received notice that the check written for payment had bounced. (T. R. Vol. V 238)  Karla was frightened of Charles because he had a reputation for violence and was becoming angrier the more crack he smoked. (T.R. Vol. V 238-244)  Karla admitted to striking Crowell on the head with a piece of wood molding because she believed that had she not done that, Charles would have shot Crowell. (T.R. Vol. V 244, 246)

Karla was convicted of aggravated kidnaping with a bludgeon and acquitted of aggravated kidnaping with a firearm. (T.R. Vol. IV 77)  She was originally sentenced to twenty years, but upon a motion to reconsider, her sentence was reduced to twelve years. (T.C. 227, 234)

On direct appeal, Karla argued that since the jurors acquitted her of the firearm count, they could not have believed that the state proved she had a firearm and because a piece of wooden molding cannot be considered a bludgeon, her conviction should be reversed. (C. 70) The appellate court affirmed her conviction and sentence in June of 2003. *People v. Sulton*, 1-01-2906, Rule 23 Order (1st Dist. 2003).

On February 16, 2006, Karla Sulton filed a *pro se* post-conviction petition alleging that appellate counsel was ineffective, that the verdicts in the case were inconsistent, that trial counsel never informed her of the State's plea bargain offer, and that the trial judge would not allow

3

Charles Sutherland's letters written to her in jail which would have supported her necessity

defense. (C. 28 et seq.)  The trial court dismissed Sulton's petition as frivolous on February 27,

2006. (R. B3, C. 66)

## II.

## LEGAL ANALYSIS

Specifically, in her *pro se* petition, Karla Sulton alleged that 1) the acquittal for the firearm count and the conviction on the bludgeon count were legally inconsistent; 2) trial counsel never informed Karla of the State's offer of 6 years plus 15 consecutive years for the firearm add-on in exchange for a guilty plea to aggravated kidnaping with a firearm; 3) that the trial judge would not allow Charles Sulton's letters written to her in jail as evidence supporting her necessity defense where, in the letters, Charles said she should have let her kill the victim; and 4) appellate counsel was ineffective for never communicating with her, for not consulting her on issues to be raised, for not sending her a copy of the brief, and for not arguing all meritorious issues on direct appeal including failing to attack the verdicts as legally inconsistent. For the reasons stated herein, counsel has concluded that these issues would be frivolous.

**Post-Conviction Procedure**

First of all, the record shows the circuit court complied procedurally with the Post-Conviction Hearing Act [hereinafter the "Act"]. The Act requires that within 90 days, the circuit court review and either dismiss or docket for further proceedings all *pro se* post-conviction petitions. 725 ILCS 5/122-2.1(a); *People v. Porter*, 122 Ill. 2d 64 (1988). In this case, the circuit court judge ruled on Sulton's petition within 90 days of its filing, and was, therefore, in compliance with the Act. (C. 66)

**Inconsistent Verdicts**

Karla Sulton argues that her conviction for aggravated kidnaping with a bludgeon is legally inconsistent with the acquittal on aggravated kidnaping with a bludgeon. In support of this, she reasons that the because by acquitting her of the firearm count, the jury rejected the

5

State's theory that Karla used the firearm in any manner. She also asserts that by acquitting her of one count, the jury believed her defense of necessity and the conviction on the other count was therefore, legally inconsistent. This is not a meritorious claim.

The Illinois Supreme Court has held that criminal defendants cannot challenge convictions on the sole basis that they are legally inconsistent with acquittals on other charges. *People v. Jones*, 207 Ill. 2d 122, 133-134 (2003); *People v. McCoy*, 207 Ill. 2d 352, 356 (2003). Moreover, the verdicts here are not legally inconsistent. The jury could have determined that she did not have a gun, but did hit Crowell with a piece of wood molding. As held by this court on direct appeal, the wood molding could be considered a bludgeon. *People v. Sulton*, No. 1-01-2906, Rule 23 Order, (1st Dist. 2003). Accordingly, this issue is not cognizable under the Post Conviction Hearing Act.

**Possible Plea Bargain**

Sulton then argued that her attorney failed to discuss with her the State's offer to recommend a 21-year sentence in exchange for her guilty plea to the firearm count. Although under some circumstances, this would be a meritorious issue, in this case, Sulton cannot show that she was prejudiced by her attorney's failure to discuss the possible plea bargain with her. Karla Sulton was acquitted of the firearm count and sentenced to a twelve-year term, a sentence 9 years shorter than the State's purported plea offer. Thus, because Sulton received a lesser sentence than the sentence offered by the State, she was not prejudiced by counsel's failure to communicate the plea offer to her.

**Charles Sulton's Letters**

Sulton further complained that the trial judge erred when he failed to allow her to introduce into evidence Charles's letters written to her while they were both in jail. Sulton

6

asserted that in these letters, Charles indicated that he wanted to kill Crowell but Karla would not

let him. Although the trial court determined that the letters were not attached to the petition, they

can be found in the record. (T.C. 77-82) However, contrary to Karla's allegations, in the letters

Charles does not intimate to Karla that he wished she had let him kill Crowell. Moreover, the

letters are hearsay and would not be admissible at trial. *People v. Roman*, 323 Ill. App. 3d 988,

998-999 (1st Dist. 2001) (a statement, not technically introduced for the purpose of its truth, is

still hearsay when its purpose is to prove the implicit assertion in the statement). Here, Karla

alleged that the letters could support her necessity defense. In order to do so, the alleged content

of the letters must be considered for the truth of the matter asserted. Since hearsay is

inadmissible, this issue is not cognizable under the Post-Conviction Hearing Act.

### Ineffective Assistance of Appellate Counsel

Finally, Sulton alleged that her appellate counsel was ineffective for failing to raise issues

on appeal, failing to communicate wither her, failing to discuss with her the issues to be raised

and for not sending her a copy of the brief on direct appeal. To succeed on a claim of ineffective

assistance of appellate counsel, petitioner must show that the failure to raise a particular issue

was objectively unreasonable and that her appeal was prejudiced by the omission. *People v.*

*Williams*, 209 Ill. 2d 227 (2004). As previously shown, the issues petitioner wanted raised on

direct appeal, i.e., that the verdicts were inconsistent and Charles's letters should have been

admitted into evidence, would not have prevailed. Therefore, appellate counsel was not

ineffective for failing to raise them.

Moreover, counsel's failure to communicate with petitioner, which should not be

condoned, nevertheless did not rise to the level of ineffective assistance. On direct appeal,

counsel can only raise issues readily apparent from the record. Thus, unlike situations where

7

discussion with a defendant might disclose meritorious issues, i.e. post-conviction petitions at the

trial court level or a motion to vacate a guilty plea where Supreme Court rules 651(c) and 604(d)

require that counsel consult with defendant, here anything Sulton told him outside the record

could not be utilized.  Moreover, Sulton cannot show that counsel's failure to discuss the case

with her resulted in his failing to raise a meritorious issue based on the record.

Accordingly, for the forgoing reasons, counsel requests that this Court allow her motion

to withdraw.

Respectfully submitted,

MICHAEL J. PELLETIER
Deputy Defender

MARIA A. HARRIGAN
Assistant Appellate Defender
Office of the State Appellate Defender
203 North LaSalle Street - 24th Floor
Chicago, Illinois  60601
(312) 814-5472

COUNSEL FOR PETITIONER-APPELLANT

No. 1-06-2886

IN THE

APPELLATE COURT OF ILLINOIS

FIRST DISTRICT

| | | |
|---|---|---|
| PEOPLE OF THE STATE OF ILLINOIS, | ) | Appeal from the Circuit Court |
| | ) | of Cook County, Illinois. |
| Respondent-Appellee, | ) | |
| | ) | |
| -vs- | ) | No. 00 CR 14045. |
| | ) | |
| KARLA SULTON, | ) | Honorable |
| | ) | Stanley J. Sacks, |
| Petitioner-Appellant. | ) | Judge Presiding. |

**ORDER**

This matter coming to be heard on motion of the Office of the State Appellate Defender, all parties having been duly notified, and the Court being advised in the premises,

IT IS HEREBY ORDERED:

That Appellant's motion to withdraw as counsel pursuant to *Pennsylvania v. Finley* is taken with the case.

_____
PRESIDING JUSTICE


_____
JUSTICE


_____
JUSTICE

DATE: _____
MARIA A. HARRIGAN
Assistant Appellate Defender
Office of the State Appellate Defender
203 North LaSalle Street - 24th Floor
Chicago, Illinois 60601
(312) 814-5472
COUNSEL FOR PETITIONER-APPELLANT

## CERTIFICATE OF COMPLIANCE

I certify that this petition conforms to the requirements of Rules 315 (c) and 341 (a).  The length of this petition, excluding the appendix is __10__ pages.


Karla Sulton, Defendant, Pro Se

(9)

No.

IN THE

SUPREME COURT OF THE

STATE OF ILLINOIS

| | | |
|---|---|---|
| PEOPLE OF THE STATE OF ILLINOIS, | ) | Petition for Leave to Appeal from the |
| | ) | Appellate Court of Illinois, First |
| Plaintiff-Appellee, | ) | Judicial District. |
| | ) | |
| | ) | |
| -vs- | ) | |
| | ) | |
| | ) | Case No.       00CR1405 |
| | ) | Appellate No.   1-06-2886 |
| KARLA SULTON, | ) | |
| Defendant-Appellant, Petitioner. | ) | |
| | ) | |

## PROOF/CERTIFICATE OF SERVICE

PLEASE TAKE NOTICE that on _Oct. 9th_ , 2007, I have placed four **(4)** copies of the attached Petition for Leave to Appeal in the institutional mail at Lincoln Correctional Center, properly addressed to the parties listed below for mailing through the United States Postal Service.

| | | |
|---|---|---|
| Supreme Court Clerk | Attorney General | State's Attorneys |
| Juleann Hornyak | Lisa Madigan | Appellate Prosecutor |
| Supreme Court Building | 100 W. Randolph, 12th Fl. | Norbert J. Goetten |
| 200 E. Capitol Avenue | Chicago, IL  60601 | 725 South 2nd Street |
| Springfield, IL  62701 | | Springfield, IL |
| | | 62704 |
| **1 original/1 copy** | **1 copy** | **1 copy** |

Pursuant to 28 USC 1746, 18 USC 1621 or 735 ILCS 5/109, I declare, under penalty of perjury, that I am a named party in the above action, that I have read the above documents and that the information contained therein is true and correct to the best of my knowledge.

SUBSCRIBED AND SWORN TO BEFORE ME
ON THIS _9_ DAY OF
_October_ , 2007.

_____
NOTARY PUBLIC

"OFFICIAL SEAL"
Tracy L. Hill
Notary Public, State of Illinois
My Commission Exp. 04/13/2009

/s/ _Karla Sulton_
Karla Sulton
R36246
Lincoln Correctional Center
P.O. Box 549
Lincoln, IL  62656

105455

**SUPREME COURT OF ILLINOIS**
**CLERK OF THE COURT**
SUPREME COURT BUILDING
SPRINGFIELD, ILLINOIS 62701
(217) 782-2035

November 29, 2007


Hon. Lisa Madigan
Attorney General, Criminal Appeals Div.
100 West Randolph St., 12th Floor
Chicago, IL 60601

No. 105455 - People State of Illinois, respondent, v. Karla
           Sulton, petitioner.  Leave to appeal, Appellate
           Court, First District.


   The Supreme Court today DENIED the petition for leave to

appeal in the above entitled cause.


   The mandate of this Court will issue to the Appellate Court

on January 4, 2008.


EXHIBIT F